**Darrick Leonard GERLAUGH,**
**Petitioner,**

v.

**Samuel LEWIS, et al., Respondents.**

**No. CIV–85–1647–PHX–RGS.**

United States District Court,
D. Arizona.

July 10, 1995.

Martin Lieberman, Phoenix, AZ, for petitioner.

Crane McClennan, Arizona Attorney General's Office, Criminal Appeals Section, Phoenix, AZ, for respondent.

## MEMORANDUM OF DECISION AND ORDER

STRAND, District Judge.

This matter is before the Court on Respondents' motion for summary judgment. The underlying action is a petition for writ of habeas corpus filed by Darrick Leonard Gerlaugh [hereinafter Petitioner] in which he contends that he is imprisoned and sentenced to death in violation of the Constitution of the United States.

Petitioner's amended petition filed on July 5, 1988, contains fifty claims for relief. Nine claims, 1–6, 8, 9 and 39, relate to the guilt phase of Petitioner's trial. Seven claims allege error with respect to Petitioner's direct appeal or state post-conviction relief proceedings. The remainder of Petitioner's claims involve challenges to his death sentence.

### PROCEDURAL HISTORY

On February 6, 1980, a Maricopa County grand jury indicted Petitioner for armed robbery, A.R.S. § 13–1904; kidnapping, A.R.S. § 13–1304; and first degree murder, A.R.S. § 13–1105. Petitioner's jury trial commenced on December 15, 1980. On December 19, 1980, after a four day trial, a jury convicted Petitioner on all counts presented in the indictment. On February 4, 1981, the trial court conducted a presentence hearing, and on February 11, 1981, the trial court sentenced Petitioner to death pursuant to A.R.S. § 13–703.

On direct appeal, Petitioner raised seven separate challenges to his conviction. Upon review, the Arizona Supreme Court affirmed each of the convictions and the sentences imposed. *State v. Gerlaugh,* 134 Ariz. 164, 654 P.2d 800 (1982); *State v. Gerlaugh,* 135 Ariz. 89, 659 P.2d 642 (1983).

On February 3, 1983, Petitioner commenced his first state post-conviction relief proceeding. (Resp't Mot. Summ. J., Ex. 24 [Part 1] at 46 [hereinafter Ex. ___].) [1] On the same day, the trial court stayed Petitioner's execution. (*Id.* at 47.) On February 4, 1983, the trial court appointed John Foreman to represent Petitioner in his post-conviction proceeding. (*Id.* at 51.)

On March 21, 1983, Petitioner filed his amended petition for post-conviction relief. (Ex. 24 [Part 2] at 57.) Petitioner later supplemented and amended his petition on April 1, 1983, May 23, 1983, July 22, 1983, and November 30, 1983. (Ex. 24 [Parts 2–4].) On December 15, 1983, and March 7–8, 1984, the state court conducted an evidentiary hearing on the allegations raised in Petitioner's petition for post-conviction relief. (Exs. 28–30.) On May 15, 1984, the trial court denied Petitioner all relief. (Ex. 23 at 83.) On July 27, 1984, the trial court denied Petitioner's motion for rehearing. (*Id.* at 86.) On April 23, 1985, the Arizona Supreme Court granted Petitioner's petition for review and affirmed the trial court's denial of relief. *State v. Gerlaugh,* 144 Ariz. 449, 698 P.2d 694 (1985) (en banc).

On July 12, 1985, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On the same day the Court stayed Petitioner's execution. On July 23, 1985, the Court appointed present counsel. On September 26, 1985, Petitioner commenced a second Rule 32 proceeding and requested a stay of federal proceedings pending its resolution. On September 30, 1985, the Court granted Petitioner's motion to stay proceedings. (File doc. no. 16.) [2]

---

1. All referenced exhibits refer to exhibits submitted in support of Respondents' motion for summary judgment. The exhibits were filed with previous motions rendered moot by intervening events. Exhibits 1–34 were filed August 19, 1985 and are identified as docket number 12–A in this Court's file. Exhibits 35–38 were filed on Sep-

tember 4, 1987 and are identified as docket number 88 in this Court's file.

2. All citations to file documents refer to numbered items within this Court's official docket as opposed to various portions of the state court record.

As noted previously, Petitioner commenced his second state post-conviction relief proceeding on September 26, 1985. (Ex. 36 at 1.) The trial court conducted oral argument on January 13, 1986, and on January 14, 1986, denied all relief on the grounds of preclusion. (Ex. 35 at 32.) On February 12, 1986, the trial court denied Petitioner's motion for rehearing. (*Id.* at 33.)

On October 31, 1986, Petitioner filed an amended petition for writ of habeas corpus in this Court. On February 10, 1987, Respondents filed the first of seven motions for partial summary judgment. On August 28, 1987, Petitioner again requested a stay of proceedings for the purpose of exhausting state court remedies. (File doc. no. 77.) On September 22, 1987, the Court granted Petitioner's motion and again stayed proceedings in this matter. (File doc. no. 93.)

On June 10, 1988, Respondents moved to vacate the stay of proceedings noting that the Arizona Supreme Court had denied review of Petitioner's third petition for post-conviction relief on February 18, 1988. (File doc. no. 96.) In addition, Respondents requested the Court to order Petitioner to respond to the various motions for partial summary judgment. On June 27, 1988, the Court granted Respondents' motion, vacated the stay of proceedings, and issued a briefing schedule.

On July 5, 1988, Petitioner requested permission to again amend his petition to incorporate the two newly exhausted claims. On July 25, 1988, the Court granted Petitioner's motion and on July 26, 1988, Petitioner filed an amended petition for writ of habeas corpus. (File doc. no. 101.)

On September 29, 1988, this case was randomly reassigned to Federal District Court Judge Roger G. Strand. On January 20, 1989, the Court withdrew the reference to the magistrate and on the same day Respondents filed a motion to stay proceedings based upon the United States Court of Appeals for the Ninth Circuit's decision in *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990), which found the Arizona death penalty statute unconstitutional. On February 9, 1989, the Court granted Respondents' motion and stayed further proceedings. On November 15, 1990, the Court, *sua sponte,* vacated the stay of proceedings based upon the United States Supreme Court's decision in *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and scheduled a status conference for December 10, 1990. (File doc. no. 132.)

After the parties requested and received opportunities to file supplements to their original pleadings along with various responses and replies, the Court scheduled a status conference for July 23, 1992. At the status conference the Court informed the parties that the file had simply become unwieldy in light of the more than fifty pleadings now covering the seven motions for partial summary judgment. Upon further discussion with the parties it was agreed that the most expeditious and practical fashion in which to proceed would be to have Respondents file one consolidated motion for summary judgment addressing all of Petitioner's allegations of error.

On October 2, 1992, Respondents filed their consolidated motion for summary judgment. (File doc. no. 166.) On January 15, 1993, Petitioner filed his response to Respondents' motion and on April 9, 1993, Respondents filed their reply.

### FACTUAL BACKGROUND [3]

On January 24, 1980, Petitioner and two other individuals, Joseph Encinas and Matthew Leisure, decided to visit a friend who lived in Chandler. After drinking and socializing for a period of time, the three men began hitchhiking towards Phoenix. Although subject to some dispute, it appears that they all determined that they would rob whomever was unfortunate enough to offer them a ride.

At approximately 11:30 p.m., Scott Schwartz, the victim, offered the three men a ride. A short time after entering the vehicle Petitioner brandished a gun and directed

---

**3.** This is a summary of the events surrounding the crime for which Petitioner was convicted and sentenced to death. Additional factual details may be presented, as needed, in the Court's analysis of each claim.

Schwartz to a remote area in Mesa. Once they arrived at the scene of the crime, all four men exited the vehicle. Petitioner then pointed the gun at Schwartz and demanded money.

Unexpectedly, Schwartz disarmed Petitioner and attempted to shoot one of the three men. After the gun did not fire, the victim was informed that it was not loaded and the three men restrained and severely beat the victim. Petitioner then determined that to ensure their anonymity Schwartz had to be killed.

Petitioner told Encinas and Leisure to place the victim in the road so that he could run him over with the car. Petitioner then ran over the victim several times. Upon discovering that the victim was not yet dead, one or more of the three men proceeded to stab the victim to death with a screwdriver found in the victim's car. After the victim was dead, the three men attempted to hide the body in an adjacent alfalfa field.

The three drove off in the victim's car, which became disabled a short time later. The three men once again began to hitchhike and were picked up by Harry Roche. Although Mr. Roche could not identify the individuals at trial, he stated that some men answering their general description unsuccessfully attempted to rob him after he picked them up hitchhiking. Several days later, Encinas relayed what had transpired to a friend who provided general information to the police. All three men were subsequently arrested and confessed. Petitioner was the only defendant sentenced to death.

### JURISDICTION AND VENUE

Petitioner is in custody pursuant to the judgment of a state court and seeks relief on the ground that his imprisonment and sentence are allegedly imposed in violation of his constitutional rights. This Court, therefore, has jurisdiction over his petition pursuant to 28 U.S.C. § 2254.

Petitioner was convicted and sentenced by the Maricopa County Superior Court in the State of Arizona. Venue is, therefore, appropriate in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 2241(d).

### LEGAL STANDARDS

A motion for summary judgment is authorized in civil proceedings pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure are, to some extent, applicable to federal habeas corpus actions filed pursuant to 28 U.S.C. § 2254. *See* Rule 11 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. Respondents' motion is therefore governed, to some extent, by the standard applied to summary judgment motions.

Pursuant to Rule 56, summary judgment may be granted if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The fact that the underlying action is a petition for writ of habeas corpus is not, however, without significance. While habeas proceedings are characterized as civil in nature, they are in fact unique, being civil challenges to previously resolved criminal proceedings. As such, application of the traditional standard of review is somewhat altered. For example, summary judgment may be appropriate even if there is what would normally be classified as a material dispute if, for example, a presumption of correctness is found to apply, or if procedural barriers prevent further review or development of a claim.

Thus, although a motion for summary judgment may be an appropriate pleading, it is not subject to the same standard of review as would be applied in a typical civil case. The doctrines of exhaustion, procedural default, and related federal habeas jurisprudence may not be ignored and may resolve or prevent consideration of an issue even if the underlying facts remain in dispute.

### DISCUSSION OF GUILT PHASE CLAIMS

**Claim 1: Whether Petitioner's arrest violated his Fourth or Fifth Amendment rights.**

In Petitioner's first claim he contends that the police arrested him in his home without a

warrant and no exigent circumstances existed to justify such an intrusion in violation of his Fourth Amendment rights. Therefore, Petitioner asserts that the custodial statement he subsequently provided law enforcement officials was obtained in violation of his Fifth Amendment rights and should have been suppressed.

### A.) *Fourth Amendment:*

Petitioner's present claim arises under the exclusionary provisions of the Fourth Amendment. As such, Respondents' request summary judgment contending that the claim is barred from further review on federal habeas pursuant to the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976).

In his response, Petitioner discounts the effect of *Stone* and proceeds to argue the merits of his claim. After review, the Court agrees with Respondents that *Stone* applies and further review or relief on this claim is foreclosed.[4]

■ In *Stone,* the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. at 494, 96 S.Ct. at 3052 (footnotes omitted); *see also Myers v. Rhay,* 577 F.2d 504 (9th Cir.1978), *cert. denied,* 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978) (applying *Stone* to Fourth Amendment claim on federal habeas review). Further, *Stone* requires nothing more than the opportunity for a fair hearing. *Caldwell v. Cupp,* 781 F.2d 714, 715 (9th Cir.1986). The only remaining issue, therefore, is whether Petitioner was provided a full and fair opportunity to litigate his claim in the state courts. *See Woolery v. Arave,* 8 F.3d 1325 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1623, 128 L.Ed.2d 348 (1994) (Unless affirmative showing is made that state denied full and fair opportunity to litigate Fourth Amendment claim, *Stone* requires dismissal of claim even if the State fails to raise it as a defense.).

### 1) STATE PROCEEDINGS:

Petitioner challenged the legality of his arrest prior to trial, on direct appeal and in his first post-conviction relief proceeding. Prior to trial Petitioner requested a suppression hearing alleging that his arrest was unlawful. (Ex. 2 at 13.) In his motion to suppress Petitioner asserted that he was arrested in his home without a warrant and that, because no exigent circumstances were present nor were the police invited to enter, his arrest was illegal. Thus, Petitioner asserted that all evidence and statements obtained incident to his arrest had to be suppressed. (*Id.*).

On June 27, 1980, the trial court commenced a three-day suppression hearing to determine the legality of Petitioner's arrest. (Exs. 4 & 5.)[5] The trial court heard testimony from various arresting officers, the officers conducting the interrogation and Petitioner's sister who was present at the time of Petitioner's arrest. In total, the testimony and arguments of counsel relating to Petitioner comprised approximately 150 pages of transcript.[6] After considering the relevant testimony and arguments of counsel, the trial court denied Petitioner's motion to suppress finding that the officers were admitted voluntarily into Petitioner's house and that resolution of other issues was unnecessary. (Ex. 1 at 22.)

---

4. The Court is aware of Petitioner's contention that the substance of his Fourth Amendment claim must be reviewed to determine whether trial counsel rendered ineffective assistance as challenged under claim 39. The Court's present determination of this claim, however, requires no substantive discussion of Petitioner's arrest or trial counsel's actions relating to the attempted suppression of Petitioner's post-arrest statements.

5. The suppression hearing involved both Petitioner and his co-defendant Matthew Leisure.

The majority of the testimony occurring on June 27, 1980, related to Petitioner's arrest. The closing arguments of counsel took place on July 18, 1980.

6. It should be noted that Petitioner's present legal arguments and authority are substantially similar to those relied upon in his original motion to suppress. (Ex. 5 at 88–102; Ex. 2 at 13b (discussing *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).)

On direct appeal, Petitioner again challenged the propriety of his arrest and the admission of his post-arrest statements. Petitioner challenged his arrest on Fourth Amendment grounds as his first claim in his opening brief to the Arizona Supreme Court. (Ex. 18 at 5–19.) In his brief Petitioner thoroughly argued the facts and law he now presents in his federal habeas petition, including the facts gleaned from testimony provided in the suppression hearing. Upon review the Arizona Supreme Court found that Petitioner's arrest was legal under the line of authority presently relied upon by Petitioner and, therefore, his confession was properly admitted. *State v. Gerlaugh*, 134 Ariz. 164, 167, 654 P.2d 800, 803 (1982).

Petitioner also challenged his arrest in his first post-conviction relief proceeding. Petitioner raised this claim as issue 1.1. (Ex. 24 [part 2] at 57.) The arguments presented were virtually verbatim to those presented in his federal habeas petition filed on July 8, 1988. Upon review the trial court ordered an evidentiary hearing. (Ex. 23 at 69.)

At the evidentiary hearing, Petitioner presented the testimony of his father, William Gerlaugh, as well as that of his former trial counsel and his sister, Beverly Gerlaugh. Petitioner also attempted to introduce the results of polygraph tests administered to both his father and sister. These test results were not admitted. Petitioner questioned his father and established what his testimony would have been had he been called to testify at the pre-trial suppression hearing. Petitioner also questioned former trial counsel, William Feldhacker, as to why William Gerlaugh was not called as a witness. (Ex. 28 at 33–76 and 96–118; Ex. 30 at 47–52.)

In reviewing this claim on-the-merits, the trial court considered the testimony and admitted exhibits as well as the record in the case. Upon review, the court concluded that, had the testimony of William Gerlaugh been presented at the pre-trial suppression hear-

ing, the result would have been no different. Moreover, the trial court found that Petitioner's trial attorney did not render ineffective assistance and his decision not to call Petitioner's father as a witness was an informed decision. (Ex. 23 at 83a.)

2) ANALYSIS:

In *Terrovona v. Kincheloe*, 912 F.2d 1176 (9th Cir.1990), *cert. denied*, 499 U.S. 979, 111 S.Ct. 1631, 113 L.Ed.2d 726 (1991), the Ninth Circuit reviewed a district court's decision to apply *Stone* and bar further review of a petitioner's Fourth Amendment claim involving his warrantless arrest. In so doing, the Court of Appeals considered what would constitute an opportunity for full and fair litigation and noted that "although the *Townsend* test 'must be given great weight in defining what constitutes full and fair consideration under *Stone*,' it need not 'always be applied literally . . . as the sole measure of fullness and fairness.'" *Terrovona*, 912 F.2d at 1178 (quoting, *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir.1977)). The court found that the extent to which claims were presented and considered by the state courts was an important factor. *Id.* at 1178–79 (citing *Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir.1981)).[7]

■ In the instant case, the trial court denied Petitioner's motion to suppress and the Arizona Supreme Court affirmed that decision. Petitioner later challenged the adequacy of both of these determinations by claiming that Petitioner's father should have been called as a witness and that polygraph evidence supported Petitioner's version of events. These allegations were considered and rejected by the trial court in a Rule 32 proceeding. Petitioner has provided no new factual information, and all of the known facts were previously presented to the state courts. Thus, Petitioner's claim is legal rather than factual in nature; and, in effect, he is merely seeking an alternative ruling. *Stone* clearly applies to the facts of this case; therefore, Petitioner may not be granted relief on this claim.[8]

---

7. In *Terrovona*, the petitioner had raised his claims in a suppression hearing and on direct appeal. The Court of Appeals found that this clearly constituted a "fair opportunity" to present his claims. *See also Devier v. Zant*, 3 F.3d 1445, 1455 (11th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 1125, 130 L.Ed.2d 1087 (1995)

(finding that suppression hearing and raising claim on direct appeal were sufficient to require invocation of *Stone*).

8. The Court notes that Petitioner's claim would also fail on the merits given *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13

**B.) *Fifth Amendment:***

■ Petitioner also attempts to raise Fifth Amendment issues relating to his confession. In response, Respondents contend that Petitioner has not previously presented this specific claim to the state courts and has procedurally defaulted his right to do so. Further, Respondents contend that Petitioner must demonstrate legitimate cause and actual prejudice before this Court may review his Fifth Amendment claim on-the-merits. (Mot. Summ. J. at 5–6.) Rather than addressing Respondents' argument, however, Petitioner merely argued the merits of his claim and contended that *Stone* does not preclude this Court from considering the claim.[9]

### 1) PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT:

■ Before a federal court may review a petitioner's claims on the merits, the petitioner must have presented in state court every claim raised in the federal petition. This is referred to as the "exhaustion requirement." *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). To properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *See Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). A claim is "fairly presented" if the petitioner has described the operative facts and legal theories on which his claim is based. *Picard v. Connor,* 404 U.S. 270, 277–78, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971).[10]

■ Generally, there are two methods by which a petitioner may satisfy the exhaustion requirement. First, he may "actually" exhaust his claims by providing the state court with an opportunity to review the relevant facts and contentions in a procedurally appropriate manner. Second, he may "technically" exhaust his claims by showing either that a state court has already found his claims defaulted because he failed to follow proper procedures or, if he never presented his claims in any forum, that no state remedies remain available to him at the time he filed his federal habeas petition. *Jackson v. Cupp,* 693 F.2d 867, 869 (9th Cir.1982) (citing *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982)).

■ If a petitioner has presented a claim in state court, but the court found the claim procedurally barred based on an independent and adequate state procedural ground (a form of "technical" exhaustion), a federal court may not reach the merits of the claim absent a showing of legitimate cause and actual prejudice or a showing that the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991); *Engle v. Isaac,* 456 U.S. 107, 126–129, 102 S.Ct. 1558, 1571–72, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

■ "Cause" is a legitimate excuse for the default and "prejudice" is actual harm from the alleged constitutional error. *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984). "Cause" ordinarily turns on whether a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. at 753, 111 S.Ct. at 2566 (quoting *Murray v. Carrier,* 477 U.S. 478,

---

(1990). The United States Supreme Court held in *Harris* that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton.*" *Id.* at 21, 110 S.Ct. at 1645.

**9.** The Court agrees with Petitioner that *Stone* does not preclude review of a properly exhausted Fifth Amendment claim. *See Withrow v. Williams,* —— U.S. ——, 113 S.Ct. 1745, 123

L.Ed.2d 407 (1993). Petitioner, however, may not circumvent or ignore the exhaustion requirement by infusing Fifth Amendment principles in such a belated fashion.

**10.** The fair presentation requirement may have been further refined by the recent Supreme Court decision in *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). That decision may prevent a federal court from considering additional evidence in support of a claim if that evidence was not previously presented to the state courts.

488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).

■■ If the claim has never been presented to a state court, a federal habeas court may determine whether state remedies remain available to hear the claim at the time the habeas petition was filed. *See Harris v. Reed,* 489 U.S. 255, 269–70, 109 S.Ct. 1038, 1046–47, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring) ("[W]here a federal habeas petitioner raises a claim which has *never* been presented in any state forum, a federal court may properly determine whether the claim has been procedurally defaulted under state law, such that a remedy in state court is 'unavailable' within the meaning of § 2254(c)."); *Teague v. Lane,* 489 U.S. 288, 299, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989) (noting same); *See also White v. Lewis,* 874 F.2d 599, 602 (9th Cir.1989) ("Dismissal of federal habeas petition for failure to exhaust is appropriate only if the prisoner had a *currently* available state remedy at the time of the federal petition.").

Pursuant to current rules of criminal procedure, Arizona prisoners may raise federal constitutional challenges to their convictions or sentences in state court pursuant to Rule 32.1. State court review or relief may, however, be limited by the related preclusion provisions of Rule 32.2.

Rule 32.2 provides, in part:

a. **Preclusion.** A defendant shall be precluded from relief under this rule based upon any ground:

. . . .

(2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding;

(3) *That has been waived* at trial, on appeal, or *in any previous collateral proceeding.*

b. **Exceptions.** Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), and (g). When a claim under [these sub-sections] is raised in a successive or untimely petition, the petition must set forth the reasons for not raising the claim in the previous petition or in a timely manner. If meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely man-

ner, the petition shall be summarily dismissed.

Ariz.R.Crim.P. 32.2 (as amended *nunc pro tunc* Sept. 24, 1992) (emphasis added).

The Comment to Rule 32.2 provides:

[S]ome issues not raised ... in a previous collateral proceeding may be deemed waived without considering the defendant's personal knowledge, unless such knowledge is specifically required to waive the constitutional right involved. If an asserted claim is of sufficient constitutional magnitude the state must show that the defendant knowingly, voluntarily and intelligently waived the claim. For most claims of trial error, the state may simply show that the defendant did not raise the error ... in a previous collateral proceeding and that would be sufficient to show that defendant has waived the claim.

Comment, Ariz.R.Crim.P. 32.2.

Thus, pursuant to rule 32.2, state prisoners may not be granted relief on any claim which could have been raised in a prior Rule 32 proceeding. Only if a claim falls within subsections (d), (e), (f), or (g) of Rule 32.1 and the petitioner can justify why the claim was omitted from a prior petition will the preclusive effect of Rule 32.2 be avoided.

■■ Therefore, when presented with a claim that has not been raised previously in state court, a federal court must determine whether a petitioner has state remedies currently available to him pursuant to Rule 32. If there are no state remedies currently available to the petitioner, he has "technically" exhausted the "new" claim and the petitioner must demonstrate legitimate cause and actual prejudice before a federal habeas court will perform an on-the-merits review.

### 2) ANALYSIS:

■■ A review of the claim at issue reveals that it was not previously presented to the state courts on Petitioner's direct appeal or in either of two post-conviction relief proceedings. Moreover, a review of the rules indicates that no state remedies remain available for the presentation of this claim in the state system. Petitioner's Fifth Amendment claim does not fit within the exceptions to

Rule 32.2; and Petitioner would, therefore, be unable to obtain review or relief through a successive post-conviction relief proceeding at this time.

Thus, the Court finds that Petitioner's claim is both exhausted and procedurally defaulted. Moreover, in light of Petitioner's failure even to attempt to demonstrate legitimate cause and actual prejudice, the Court finds that his claim may not be reviewed on-the-merits and he may not be granted habeas relief.

### Claim 2: Whether Petitioner's Sixth Amendment right was violated by the admission of a nontestifying codefendant's confession.

Petitioner contends that he is entitled to federal habeas relief because his Sixth Amendment right of Confrontation was violated by the admission of a nontestifying codefendant's confession. In opposition, Respondents contend that Petitioner is attempting to rely upon a new rule of law not applicable to his case on collateral review. In the alternative, Respondents contend that no constitutional error occurred because the codefendant's confession was independently admissible against Petitioner. Respondents also argue that even if a constitutional error occurred, the error was harmless.

#### A.) *Facts:*

At trial, both Petitioner's own confession as well as that of his codefendant, Joey Encinas, were admitted into evidence. Petitioner moved to suppress all evidence, including his confession, that was obtained after his arrest on the grounds that his warrantless arrest was unlawful. (Ex. 2 at 13.) The trial court denied his motion to suppress finding that the officers were admitted voluntarily into Petitioner's home. (Ex. 1 at 22.) Petitioner also objected to the admission of Encinas' confession and, on several occasions, unsuccessfully sought a severance. (Ex. 11, R.T., 12/15/80 at 55–66; Ex. 12, R.T., 12/16/80 at 62–64, 127–130; Ex. 13, R.T., 12/17/80 at 133–34.) The trial court denied the motion to sever finding "there really are no inconsis-

tencies regarding the major elements of the crimes, and that there certainly wouldn't be any devastating effect as to the defendant Gerlaugh with the admission of both statements." (Ex. 11, R.T., 12/15/80 at 62.) The trial court instructed the jury that the confessions could only be considered against the confessor and not his codefendant. (Ex. 14, R.T., 12/18/80 at 108.)

Detective Brice testified at trial that, after telling various false stories for about an hour, Encinas stated that he was going to tell the truth. (Ex. 12, R.T., 12/16/80 at 126.) Detective Brice related the following statement given by Encinas: [11]

On January 24, 1980, Encinas, Matthew Leisure, and Petitioner had been socializing and drinking Jack Daniels whiskey at the residence of Shirley Jones in Mesa. (*Id.* at 125.) After leaving Ms. Jones' house, the three of them hitchhiked until picked up by an individual driving a large white four-door vehicle. (*Id.* at 132.) Petitioner was sitting in the back seat on the passenger side (*Id.*) when Petitioner pulled out a .357 Colt Python. (Ex. 13, R.T., 12/17/80 at 48.) Petitioner directed the driver to a dirt road off Arizona Avenue at which time Petitioner moved into the front seat, placing the victim between Petitioner and Leisure and leaving Encinas alone in the back seat. (Ex. 12, R.T., 12/16/80 at 133.)

After they all exited the car, Petitioner demanded money from the victim. (*Id.*) The victim then somehow took the gun away from Petitioner and attempted to shoot Leisure. (*Id.* at 134.) After the victim tried to fire the gun, someone uttered a statement substantially similar to "[t]he gun's not loaded, sucker." [12] (*Id.*) When the victim attempted to flee, Petitioner told them to get the victim at which time Leisure pursued and tackled him. (*Id.* at 135.) All three then began to beat him. (*Id.*) The beating lasted 10–15 minutes after which Petitioner informed the victim that "[w]e're going to have to kill you." (*Id.* at 136.)

---

**11.** The actual audio tape of Encinas' statement was also admitted into evidence. (Ex. 14, R.T., 12/18/80 at 18–19.)

**12.** At various times during the interview Mr. Encinas indicated that first Petitioner then both Petitioner and Leisure made that type of statement. (Ex. 12, R.T., 12/16/80 at 134.)

Petitioner then instructed the other two men to drag the victim up onto the road. (*Id.* at 137.) Petitioner drove over the victim in the victim's car. (*Id.*) Petitioner missed the victim several times because the victim rolled out of the way, but then eventually ran over him at least two or three times. (Ex. 12, R.T., 12/16/80 at 137.) After Petitioner ran over the victim, he was still moaning so Petitioner presented Encinas with a screwdriver and instructed Encinas to stab the victim. (*Id.* at 138.) Encinas attempted to stab the victim, but he could not bring himself to stab the victim hard enough to penetrate the skin. (*Id.*) Leisure then grabbed the screwdriver. The victim was stabbed a total of approximately 30–40 times in the head and face. (*Id.* at 139; Ex. 13, R.T., 12/17/80 at 56.) Petitioner also stabbed the victim several times after Leisure. (Ex. 13, R.T., 12/17/80 at 57–58.) They all carried the victim into the field and after the stabbing, all three attempted to cover the body in alfalfa. (Ex. 12, R.T., 12/16/80 at 138–39.)

After the murder all three got into the white car and drove a short distance until the rear tire blew out. (Ex. 11, R.T., 12/15/80 at 29.) Encinas and Leisure then separated from Petitioner who, after obtaining a ride from a driver in a red pickup truck, pulled alongside and picked them up. (*Id.;* Ex. 13, R.T., 12/17/80 at 52.) After driving a short distance Encinas watched Petitioner pull a gun on the driver. (Ex. 11, R.T., 12/15/80 at 29; Ex. 13, R.T., 12/17/80 at 53.) At one point Encinas jumped out of the truck because he wanted to get away from the situation, but Petitioner instructed him to get back in the truck. (Ex. 11, R.T., 12/15/80 at 29.)

Detective Weiss testified at trial that Petitioner gave the following statement:

Petitioner left Chandler with Leisure and Encinas and started hitchhiking toward Mesa. They were hitchhiking with the intent to rob whoever offered them a ride. (Ex. 13, R.T., 12/17/80 at 83, 101.) After a large white car pulled over, Petitioner entered the vehicle and was seated in the rear seat on the passenger side. (*Id.*).

Almost immediately after they began moving, Petitioner pulled a .357 magnum, placed it against the driver's head and instructed him where to drive. (*Id.* at 84.) After they stopped, Petitioner ordered the victim to exit the car, pointed the gun at him and demanded his money. (*Id.* at 85.) The victim then grabbed the weapon and turned it upon three men and attempted to fire. (*Id.* at 85–86.) Petitioner said to the victim, "You just fucked up. There's no bullets in the gun." (*Id.* at 86.) Petitioner then knocked the victim to the ground at which point all three men began beating him. (*Id.* at 86.)

After the beating, Petitioner decided to kill the victim to ensure that they could not be identified for the robbery and ordered Encinas and Leisure to drag the victim onto the road while he went to the car. (*Id.* at 87.) Petitioner went to the car to run over the victim. (*Id.*) Petitioner ran over the victim and stopped the car on the victim at one point in an attempt to spin the tire and kill the victim. (*Id.* at 88.) Nevertheless, Petitioner noticed the victim was alive so he took a screwdriver he found and stabbed the victim a large number of times. (*Id.* at 90–91.) Petitioner did not know if anyone else stabbed the victim. (*Id.*) After all three attempted to hide the body by covering it in alfalfa, they all left in the victim's car with Petitioner driving. (*Id.* at 91.)

**B.) *Substantive Law:***

Petitioner contends that the admission of his codefendant's confession constituted error under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and more specifically, *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In opposition, Respondents contend that Encinas' confession was lawfully admitted against Petitioner at the time of his trial pursuant to *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), and that *Cruz* established a "new rule" of law that may not be retroactively applied to Petitioner's case on collateral review. Moreover, Respondents contend that Encinas' confession could be independently admitted against Petitioner. Finally, Respondents contend that, even if *Cruz* may be applied to Petitioner's case and the confession could not be independently admitted against Petitioner,

any error in admitting Encinas' confession was harmless.

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court crafted a narrow exception to the principle that juries will follow their instructions and held that jury instructions which attempted to limit consideration of a nontestifying codefendant's confession were constitutionally inadequate to preserve a non-confessing defendant's Sixth Amendment right to confront the witnesses against him. *Bruton,* 391 U.S. at 136, 88 S.Ct. at 1628; *see also Richardson v. Marsh,* 481 U.S. 200, 207, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). One year after *Bruton* was decided the Supreme Court held that such errors do not necessarily mandate a new trial and may be reviewed under a harmless error analysis. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Approximately 10 years later the Supreme Court addressed the effect of *Bruton* when a defendant has himself confessed and his confession is substantially similar or "interlocks" with that of a codefendant. Upon review the Court held that in such cases, proper limiting instructions sufficiently preserve a defendant's Sixth Amendment rights. *Parker v. Randolph,* 442 U.S. 62, 75, 99 S.Ct. 2132, 2140, 60 L.Ed.2d 713 (1979).

In 1987, the Supreme Court decided *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In *Cruz* the Court overruled *Parker* and held that in cases "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant ... the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." *Cruz,* 481 U.S. at 193, 107 S.Ct. at 1719.

 Confrontation Clause violations are trial type errors and are subject to a harmless error analysis. *Cruz,* 481 U.S. at 194, 107 S.Ct. at 1719–20; *see also Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Mata v. Ricketts,* 981 F.2d 397 (9th Cir.1992), *cert. denied,* — U.S. —, 115 S.Ct. 436, 130 L.Ed.2d 348 (1994). The harmless error test until recently required a federal habeas court to determine whether, based on the entire record, it appeared "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). However, the Supreme Court modified the test to be applied on collateral review. A federal court on habeas review must now apply a more deferential standard and its inquiry is whether the error had a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahmson,* 507 U.S. —, —, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Only if the admission of the codefendant's confession resulted in "actual prejudice" is Petitioner entitled to habeas relief. *Id.* at —, 113 S.Ct. at 1722.

Although it is impossible to determine whether the jury used a codefendant's confession to determine a petitioner's guilt, several courts have delineated factors that are relevant to a harmless error analysis. The Supreme Court suggested that the strength of the prosecution's case against the petitioner, the presence of evidence to substantiate or contradict the codefendant's confession and the importance of the codefendant's confession should be considered by a reviewing court. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Other relevant factors include the interlocking nature of the codefendant's confession, *Cruz,* 481 U.S. at 192–93, 107 S.Ct. at 1719, objective evidence that corroborates or contradicts the petitioner's confession and the attempts made by the petitioner to repudiate his own confession. *Samuels v. Mann,* 13 F.3d 522, 526–27 (2nd Cir.1993), *cert. denied,* — U.S. —, 115 S.Ct. 145, 130 L.Ed.2d 85 (1994).

C.) *Analysis:*

 Applying the above mentioned harmless error analysis, the Court finds that, assuming *Cruz* applies retroactively and the codefendant's confession could not be independently admitted against Petitioner, any constitutional error that may have resulted

from the admission of Encinas' confession is harmless error.

The prosecution's main evidence against Petitioner was his own confession presented through the testimony of Detective Al Weiss.

> [T]he defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. Though itself an out-of-court statement, it is admitted as reliable evidence because it is an admission of guilt by the defendant and constitutes direct evidence of the facts to which it relates.... An observer may not correctly perceive, understand, or remember the acts of another, but the admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct.

*Bruton v. United States,* 391 U.S. 123, 139–40, 88 S.Ct. 1620, 1630, 20 L.Ed.2d 476 (1968) (WHITE, J., dissenting). Petitioner's confession was comprehensive, providing evidence to support each element of the crimes charged and of which Petitioner was found guilty by a jury.

Most importantly, the truth of Petitioner's confession went unchallenged. As the Supreme Court noted in *Cruz* concerning the harmfulness of interlocking confessions:

> It [that a codefendant's confession will be more damaging if it confirms the defendant's confession] might be otherwise if the defendant were *standing by* his confession, in which case it could be said that the codefendant's confession does no more than support the defendant's very own case. But in the real world of criminal litigation, the defendant is seeking to *avoid* his confession—on the ground that it was not accurately reported, or that it was not really true when made.

*Cruz,* 481 U.S. at 192, 107 S.Ct. at 1718–19. In the present case Petitioner did not seek to avoid his confession on the grounds that the confession was involuntarily given by Petitioner, untrue or improperly reported by Detective Weiss.[13] Rather, Petitioner sought to avoid the admission of his confession on the ground that his warrantless arrest was un-

lawful. Petitioner did not cross-examine Detective Weiss concerning the integrity of the interrogation process or the voluntariness of the confession. Rather, Petitioner's cross-examination of Detective Weiss consisted of eliciting testimony to support his defense of intoxication and to confirm the few areas of divergence between Petitioner's and Encinas' confession—whether Encinas and Leisure joined Petitioner in the intent to rob, whether the victim drove the entire time and whether Petitioner handed the screwdriver to anyone else. (Ex. 13, R.T., 12/17/80 at 100–102.) Therefore, Encinas' confession would not have the devastating effect on Petitioner that the Supreme Court was concerned about in *Cruz.*

The prosecution also presented to the jury evidence that corroborated Petitioner's confession. The medical examiner's testimony and the photographs of the victim's injuries corroborated Petitioner's account of beating, running over with the car and stabbing the victim. (Ex. 12, R.T., 12/16/80 at 33–34, 82–96.) Further corroborating evidence came in the form of Sergeant Bratcher's testimony regarding the flat tire and the blood and hair found on the car (*Id.* at 19, 23) and Detective Palmer's testimony regarding the tire tracks found at the murder scene and along the path the car traveled until it was abandoned (*Id.* at 46–48, 51–54) and the condition of the transmission (*Id.* at 56). Finally, the screwdriver found at the scene of the murder corroborated Petitioner's confession. (*Id.* at 38–39.)

The interlocking nature of the codefendant's confession is another relevant factor to be considered when determining whether the admission of a codefendant's confession is harmless error. *Cruz,* 481 U.S. at 192–93, 107 S.Ct. at 1719. Encinas' confession is similar to Petitioner's in most respects. The main differences between the confessions are: 1) Petitioner stated that all three intended to rob whoever picked them up, and Encinas stated he was surprised when Petitioner pulled out the gun; 2) Petitioner stated that the victim drove the entire time to the canal, but Encinas said that Petitioner

---

**13.** Petitioner did object to the admission of his confession that related to the incidents involving the attempted robbery of Mr. Roche on the grounds that such evidence is improper other act evidence. (Ex. 13, R.T., 12/17/80 at 7–10, 93.)

drove part of the time; and 3) Petitioner stated that he did the stabbing and did not remember if anyone else stabbed the victim, as opposed to Encinas' statement that he attempted to stab the victim before handing the screwdriver to Leisure.

These differences do not render the admission of Encinas' confession harmful. Petitioner's confession indicates greater involvement in the murder, instead of the usual passing of the blame. Also the inconsistencies would not absolve Petitioner of any guilt, given the consistent statements concerning Petitioner's involvement in the murder. *See Toolate v. Borg*, 828 F.2d 571, 576 (9th Cir. 1987) (finding inconsistency in codefendant's confession of who actually shot series of bullets is irrelevant because consistent testimony of presence and assistance was sufficient to support conviction regardless of whether Petitioner of codefendant actually fired shots).

Finally, the Court considered the objective evidence that corroborates the codefendant's confession. In addition to the evidence discussed above that corroborated Petitioner's confession, the following evidence found at the murder scene corroborates Encinas' confession: 1) an eagle necklace belonging to Encinas (Ex. 12, R.T., 12/16/80 at 40–43), 2) the shoelace that Encinas described as being used to tie the victim (*Id.* at 44), and 3) parts of the rubber glove used by Encinas during the beating (*Id.* at 40). Also, given Encinas' directions, the detectives were able to find the jacket Encinas was wearing and discarded the night of the murder. (Ex. 13, R.T., 12/17/80 at 123–24.)

Therefore, given Petitioner's comprehensive confession, the validity of which he did not challenge, the evidence that corroborated Petitioner's and Encinas' confessions and the extent that the confessions interlocked, the Court finds that Encinas' confession did not have a substantial and injurious effect or influence on the jury. Petitioner's conviction cannot be overturned based on claim 2.

**Claim 3: Whether the trial court erred in not requiring the State to elect between premeditation and felony murder.**

Petitioner alleges that he is entitled to federal habeas relief because he was denied due process and a fair trial by the State's refusal to select a theory of guilt and the duplicitous nature of the indictment charging him with the offense of murder.

Petitioner was indicted by a Maricopa County Grand Jury on February 6, 1980. (Ex. 2 at 1.) Count III of the indictment charged each of the three codefendants with first degree murder pursuant to A.R.S. § 13–1105. Section 13–1105(A)(1) and (A)(2) defines first degree murder and provides that it may be accomplished either with premeditation or by causing the death of another while in the course of or in furtherance of specific enumerated felonies.

Petitioner contends that charging both premeditated murder and felony murder within one count of the indictment, that the trial court's subsequent jury instructions allowing for proof of first degree murder in either form, and that the trial court's refusal to require the State to select one or the other of these two theories combined to deprive him of due process. (Pet. at 17–20.) Moreover, Petitioner contends that the single form of verdict utilized in this case would not ensure that the jury reached a unanimous determination as to the method by which Petitioner committed first degree murder.

In opposition, Respondents contend that Arizona has defined first degree murder as a single offense which may be committed in alternative fashions. Respondents further assert that this method of defining first degree murder has been found constitutional by the United States Supreme Court in *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). Respondents, therefore, request summary judgment with respect to this claim.

In response, Petitioner effectively concedes applicability of *Schad,* but argues that because it was a plurality opinion, the Supreme Court *may* avoid the principle of *stare decisis* and, therefore, this Court should grant Petitioner relief.

A.) *Law:*

In *Schad* the Supreme Court found constitutional Arizona's practice of accepting general verdicts for first degree murder even

though there was no way to determine whether the jury reached unanimity with respect to the manner in which it was accomplished. *Schad*, 501 U.S. at 645, 111 S.Ct. at 2504; *see also Sullivan v. Borg*, 1 F.3d 926, 927 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 931, 127 L.Ed.2d 223 (1994) (applying *Schad* principles to California's first degree murder statute). The Court noted that under Arizona law felony murder and premeditated murder were not separate offenses. Rather they were alternative means of satisfying a single *mens rea* element of first degree murder. *Schad*, 501 U.S. at 637, 111 S.Ct. at 2499–2500.

In light of this holding, this Court's task is to determine whether any constitutional violations occurred in relation to the method in which the crime was charged and prosecuted or the manner in which the jury was instructed.

### B.) *Analysis:*

▪ Petitioner contends that the indictment charging him with first degree murder was duplicitous because it charged two different offenses in one count, and thereby deprived him of sufficient notice of the charges alleged. The Court finds Petitioner's argument squarely foreclosed by *Schad.* In Arizona premeditated murder and felony murder lead to one crime—first degree murder. *See State v. Berndt*, 138 Ariz. 41, 45, 672 P.2d 1311, 1315 (1983).

▪ Conjunctively charging alternative means of committing an offense in a single count of an indictment is not a deprivation of due process nor does it deprive a defendant of adequate notice of the offense charged. *See United States v. UCO Oil Co.*, 546 F.2d 833, 838 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). Consequently, no constitutional violation occurred by the trial court's refusal to compel the State to select a particular "theory" of murder. Moreover, Petitioner's challenge to the single form of verdict, a form of first degree murder as opposed to felony

murder or premeditated murder, is unavailing for the same reasons. *Schad*, 501 U.S. at 645, 111 S.Ct. at 2504; *see also Suniga v. Bunnell*, 998 F.2d 664, 668 (9th Cir.1993) (following *Schad* noted that states may submit both malice-murder and felony murder to a jury without a requirement of unanimity with respect to either method). The Court, therefore, denies Petitioner's third claim for relief.

### Claims 4 & 8: Whether the trial court erred in not giving a lesser included offense instruction.[14]

As his fourth claim Petitioner contends that the trial court erred by failing to provide a lesser included offense instruction. Specifically, Petitioner contends that trial court erred by not instructing the jury on second-degree murder as a lesser included offense to first degree murder.[15] Petitioner contends that he was entitled to the requested instruction pursuant to *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

In his eighth and related claim, Petitioner contends that the trial court violated his due process rights by providing confusing and erroneous jury instructions. Specifically, Petitioner contends that the trial court provided an intoxication instruction and informed the jury that such evidence could be considered when considering issues of intent or knowledge. Petitioner asserts, however, that without a lesser included offense instruction, the jury was incapable of giving meaningful effect to the intoxication instruction.

Respondents argue that, despite the fact that Petitioner was prosecuted for first degree murder under dual theories of premeditation and felony murder, the evidence in this case simply did not warrant the issuance of a second-degree murder instruction.

### A.) *Confusing or Erroneous Instructions:*

Petitioner requested a jury instruction on intoxication. (Ex. 14 at 36.) The State opposed Petitioner's request contending that

---

14. Petitioner's eighth claim of error was presented separately in his amended petition, however, the issue (juror confusion due to instructions) is inextricably intertwined with Petitioner's fourth claim (alleged *Beck* violation). The Court will, therefore, discuss the claims simultaneously.

15. Petitioner requested that the jury be instructed on the offense of second-degree murder. (Ex. 14 at 29–33.) After presenting his basis for making such a request, the trial court refused to issue the instruction. (*Id.*)

there was no evidence warranting an intoxication instruction. (*Id.*) Despite the State's opposition, however, the trial court noted that there was some testimony regarding Petitioner's consumption of alcohol and determined that it would instruct the jury on the effects of intoxication. (*Id.* at 37, 47.)

Throughout closing arguments, the State argued that the evidence demonstrated both felony murder and intent by Petitioner to commit the crimes for which he was charged. (*See e.g.* Ex. 14 at 54, 56.) Following closing arguments, the trial court explained for the jury the legal effect of intoxication as follows:

> [N]o act committed by a person while intoxicated is less criminal by reason of his having been in such condition. However, for the crimes of armed robbery, kidnapping and murder first degree, there must be proof that the defendant acted intentionally or knowingly. If you determine that the defendant was intoxicated at the time, you may consider the fact that he was intoxicated in determining whether he could have intentionally or knowingly committed the crimes.

(Ex. 14 at 110, 112–13.)

In essence, Petitioner argues that he was entitled to a second-degree murder instruction on the ground that his voluntary intoxication negated some element necessary for conviction of first degree murder. While Petitioner attempts to utilize the fact that the intoxication instruction was given as a means of bootstrapping his *Beck* claim, the Court finds that Petitioner was not legally entitled to the intoxication instruction under state law.

In Arizona, a criminal defendant is entitled to a voluntary intoxication instruction where intent is a *necessary* element of the crime charged. *See* A.R.S. § 13–503. The *mens rea* required under Arizona's first degree murder statute is intentionally *or* knowingly. *See* A.R.S. § 13–1105(A)(1). Where a defendant is charged with *knowingly* committing first degree murder, a voluntary intoxication instruction is not permitted. *State v. Rankovich*, 159 Ariz. 116, 122, 765 P.2d 518, 524 (1988). This rule holds where the defendant is charged with intentionally *or* knowingly committing first degree murder. *State v. Schurz*, 176 Ariz. 46, 55, 859 P.2d 156, 164 (Ariz.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 640, 126 L.Ed.2d 598 (1993).

Here, Petitioner was charged in the indictment with knowingly causing the death of Scott Schwartz. (Ex. 2 at 1.) Accordingly, it was improper under state law for the court to allow the jury to consider voluntary intoxication. The fact that an incorrect jury instruction may have been utilized is not, however, a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 72–73, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). To receive habeas relief from an otherwise constitutional conviction on the basis of improper jury instructions, a petitioner must prove that the allegedly improper jury instruction violated some right guaranteed by the Fourteenth Amendment. *McGuire*, 502 U.S. at 72–73, 112 S.Ct. at 482 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)); *see also Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993). Thus any confusion engendered by the trial court's instruction regarding intoxication does not serve as a basis for federal habeas relief.

**B.** *Lesser Included Offense Instruction:*

In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court held that where the evidence in a capital case would support a conviction on a lesser included offense, the jury must be instructed on the appropriate lesser included offense. *Beck*, 447 U.S. at 635, 100 S.Ct. at 2388. The Court noted that a failure to provide the jury with the option of convicting on a lesser offense increased the risk of an unwarranted conviction for capital murder. *Beck*, 447 U.S. at 637, 100 S.Ct. at 2389.

Further refining the requirement of *Beck*, the Supreme Court held that due process only requires a lesser included offense instruction when such an instruction is supported by the evidence adduced at trial. *See Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). Moreover, the Court held that "[w]here no lesser included offense exists, a lesser included offense instruction detracts from, rather than en-

hances, the rationality of the process." *Spaziano v. Florida,* 468 U.S. 447, 455, 104 S.Ct. 3154, 3159, 82 L.Ed.2d 340 (1984).

As discussed previously, first degree murder in Arizona may be proven by one of two means. The State may either prove that the defendant committed the murder with premeditation or in the course or furtherance of an enumerated felony. *See* A.R.S. § 13–1105(A). In the instant case, the State did not select one particular theory and, instead, presented evidence which it then argued was sufficient to prove either form of first degree murder.

As noted above, however, Petitioner was not entitled to the instruction on voluntary intoxication under state law and, therefore, such an instruction could not lawfully impact upon the charge of knowingly committing first degree murder. Accordingly, it may not serve as a basis for a mandatory lesser included offense instruction or an asserted *Beck* violation. Moreover, no lesser included offense instruction was available for the alternative theory of felony murder. "Under Arizona law ... there is no lesser included homicide offense of the crime of felony murder since the mens rea necessary to satisfy the premeditation element of first degree murder is supplied by the specific intent required for the felony." *State v. Arias,* 131 Ariz. 441, 443–44, 641 P.2d 1285, 1287–88 (1982); *see also State v. LaGrand,* 153 Ariz. 21, 30, 734 P.2d 563, 572 (1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987) (citations omitted).

██ Thus, Petitioner was not lawfully entitled to a lesser included offense instruction. Intoxication could not lawfully be considered in relation to whether Petitioner knowingly caused the death of the victim and, therefore, no instruction for second degree murder was necessary. Further, there is no lesser included offense to the alternative theory of first degree murder, i.e. felony murder. Accordingly, Petitioner may not be granted habeas relief on either of his claims.

**Claims 5 & 9: Whether the trial court erred in admitting certain photographs and/or the testimony of witness Roche.**

As his fifth claim for relief Petitioner contends that his due process rights were violated by the trial court's admission into evidence of gruesome photographs.

This claim was raised on direct appeal and the Arizona Supreme Court found that "while the photographs are admittedly gruesome, we cannot say, after a careful review of the evidence that the trial court abused its discretion in admitting the photographs." *State v. Gerlaugh,* 134 Ariz. 164, 169, 654 P.2d 800, 805 (1982). The Court noted that the photographs may have been useful to show how the crime was committed and to assist the jury in understanding the medical examiners testimony. *Id.* Thus, Petitioner's claim clearly raises a challenge to the propriety of a state law evidentiary ruling.

Similarly, Petitioner's ninth claim also alleges error in the state court's admission of evidence. Specifically, Petitioner contends that the trial court erred in admitting into evidence the hypnotically refreshed testimony of Harry Roche.

This claim was also raised on direct appeal and the Arizona Supreme Court found that, although the admission of the evidence at trial was an error of state law, the error was harmless. The Arizona Supreme Court based its conclusion upon the fact that Mr. Roche provided only general testimony unrelated to the murder itself and that even at trial he was unable to identify Petitioner. *Gerlaugh,* 134 Ariz. at 171, 654 P.2d at 807.

██ A Petitioner may be entitled to habeas relief for wrongly admitted evidence only when the admission of the evidence at issue renders the state proceeding so fundamentally unfair as to violate federal due process. *Estelle v. McGuire,* 502 U.S. 62, 72–73, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). Federal courts do not, however, sit as a "state supreme court of errors." *Jammal v. Van de Kamp,* 926 F.2d 918 (9th Cir.1991). The United States Supreme Court has described a denial of due process in a criminal proceeding as follows:

[It] is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial;

the acts complained of must be of such quality as necessarily prevents a fair trial. *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941); *see also Kealohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir.1986), *cert. denied,* 479 U.S. 1068, 107 S.Ct. 958, 93 L.Ed.2d 1006 (1987).

The photographs at issue, although gruesome in nature, were not so inflammatory or prejudicial as to render the trial fundamentally unfair. Their admission did not constitute a violation of fundamental fairness. Petitioner does not, therefore, state a colorable claim for relief. Similarly, the admission of Mr. Roche's testimony cannot, in light of the record as a whole, be deemed so prejudicial as to have rendered the trial fundamentally unfair. Accordingly, Petitioner is denied relief on his fifth and ninth claims of error.

**Claim 6: Whether the State failed to establish the corpus delicti prior to the admission of Petitioner's statement.**

As his sixth claim for relief Petitioner contends that he was deprived of due process because the State failed to establish the corpus delicti of either kidnapping or armed robbery prior to the admission of his statements. (Pet. at 23.) Respondents contend that this is a matter of state law and raises a claim that is simply not cognizable on federal habeas review.

The Arizona Supreme Court addressed this claim on-the-merits in Petitioner's direct appeal.[16] In reviewing Petitioner's claim the Arizona Supreme Court found that, as a matter of state law, when a confession is voluntarily given, the corpus delicti may be established even by circumstantial evidence and the order of proof may not serve as the basis for error. *Gerlaugh,* 134 Ariz. at 170, 654 P.2d at 806.

■ A state prisoner is entitled to federal habeas relief only if he is held in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A mere error of state law does not constitute a denial of due process. *Estelle v. McGuire,*

502 U.S. 62, 67–69, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *see also Middleton v. Cupp,* 768 F.2d 1083, 1085 (9th Cir.1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986).

■ Petitioner has once again raised an alleged error, which if true, would constitute an error of state law. Accordingly, Petitioner may not be granted habeas relief on this claim.

**Claim 39: Whether Petitioner's counsel rendered constitutionally ineffective assistance at trial.**

As his thirty-ninth claim for relief Petitioner contends that he was deprived of his Sixth Amendment right to effective assistance of counsel at trial. Specifically, Petitioner contends that his former trial attorney, William Feldhacker, rendered constitutionally ineffective assistance with respect to his handling of Petitioner's motion to suppress.

Petitioner asserts that trial counsel erred by failing to call his father to testify at the suppression hearing. Petitioner contends that his father, William Gerlaugh, would have provided additional support to his sister's testimony pertaining to his arrest and that the inclusion of his testimony would have resulted in the suppression of his statements. (Resp. to Mot. Summ. J. at 134–138.)

Petitioner presented this claim to the state courts in a petition for post-conviction relief. Additionally, Petitioner requested and received a two-day evidentiary hearing at which the issue of counsel's alleged ineffectiveness was addressed.[17]

*A.) Authority:*

■ To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance fell outside the wide range of minimally competent representation and that, but for counsel's errors, a reasonable probability exists that the result at trial would have been different.

---

**16.** It is worth noting that in raising this claim on direct appeal, Petitioner presented an almost verbatim argument to the Arizona Supreme Court. (Ex. 18 at 35–38.)

**17.** Any claim by Petitioner that the evidence was not adequately developed is meritless. Petitioner had the opportunity to fully litigate his claims of ineffective representation in the state courts and any failure to adequately develop this claim may be attributable to his own negligence.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A failure of Petitioner to sustain his burden with respect to either part results in a failure of the whole.

■ The standard by which the prior performance of an attorney is judged is an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. In other words, to prove that an attorney ineffectively represented the defendant, the petitioner must prove that the attorney's performance fell below an undefined objective standard reviewed solely upon the circumstances of the particular case. Moreover, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential ... [and] [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065.

■ To demonstrate actual prejudice from his counsel's actions, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. However, an evaluation focussing only on the probable outcome is itself deficient. The Court would also have to consider whether the result of the trial was fundamentally unfair or unreliable. *See Lockhart v. Fretwell,* 506 U.S. 364, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

B.) *Analysis:*

As noted previously, Petitioner was arrested on January 31, 1980. The arrest occurred at Petitioner's house and was accomplished without a warrant. Petitioner was taken into custody and shortly thereafter provided law enforcement authorities with a voluntary confession. (Ex. 4 at 81.)

Because Petitioner was arrested without a warrant, trial counsel contested the propriety of the arrest and the legality of the arresting officers' decision to enter the Gerlaugh residence. Various officers testified, and there was some inconsistency regarding whether an invitation to enter was rendered by Petitioner's sister. One of the arresting officers stated that the three officers positioned at the front door just walked in after the door was opened by Petitioner's sister who then stepped out of the way. (Ex. 4 at 43–44.) Officer Arthur Buelna testified that he heard the girl invite the officers into the dwelling. (Ex. 4 at 54.) Lieutenant Donny Jones admitted that he did not have permission to enter the residence at the precise time it was entered. (Ex. 4 at 65–66.) Mr. Feldhacker also developed the fact that after the officers entered and arrested Petitioner, William Gerlaugh asked the police to leave. (Ex. 4 at 68.)

Counsel also called Petitioner's fifteen year old sister to testify regarding the circumstances of Petitioner's arrest. (*Id.* at 110.) Petitioner's sister testified that after hearing a knock on the door, Petitioner's father asked her who was there and she informed him that she would answer the door. Counsel further developed the fact that Miss Gerlaugh did not invite the arresting officers into their home and had only opened the door halfway. (*Id.* at 111–112.)

On cross-examination the State developed the fact that Miss Gerlaugh recognized Lt. Jones, had no reason to expect a police officer at that time, and had no reason to exclude him from their residence. (*Id.* at 112–14.) Counsel for the State also developed that Miss Gerlaugh was not pushed out of the way and, after a short time, she stepped to the side and the officers passed by her. (*Id.* at 116.)

At Petitioner's evidentiary hearing with respect to his petition for post-conviction relief, counsel called William Gerlaugh to testify in support of a claim of ineffective assistance of counsel. (Ex. 28 at 33.) At the hearing, Mr. Gerlaugh testified that after hearing a knock on the door he yelled to Beverly to answer it and immediately heard the disruption of the officers entering the house. (*Id.* at 43.) Mr. Gerlaugh did not hear Beverly render any sort of invitation to the officers and he asserted that he was close enough that he would have heard any statement. (*Id.*)

At the evidentiary hearing Petitioner's sister again testified, but altered her testimony

from that previously provided at the suppression hearing. Specifically, Beverly Gerlaugh now stated that when the officers saw Petitioner they *pushed her aside* and grabbed him. (Ex. 28 at 73.)

Petitioner's former trial attorney, William Feldhacker, also testified at the hearing. (Ex. 28 at 95.) When questioned regarding his failure to call Petitioner's father as a witness at the suppression hearing, Mr. Feldhacker stated, in part:

> There was a dispute in the evidence as to what was said by Darrick's sister, and that dispute was two police officers were saying they heard someone from within say, "Come in."
>
> Her testimony, the sister's testimony, was to the effect she said, "I'll get it." In talking with the father, my recollection of that is that he did not hear the daughter say anything. She, I believe, heard the father say something, "Who's here," apparently not knowing who might come to the house at that time.
>
> But I didn't want to present any evidence that nothing was said.

(Ex. 28 at 102.)

A review of the record makes it clear that there is some support for counsel's decision not to call William Gerlaugh. Petitioner's father testified that from the time Beverly opened the door till the police entered he did not hear Beverly make any statements and that he was close enough to hear anything she may have said. (Ex. 28 at 43.) Moreover, the father stated that "[a]ll Beverly did was open the door and that was it. I mean it was just in, bang. I mean, it just happened fast. They were fast." (Ex. 28 at 65.)

■■■ Whether counsel's interpretation of what the Petitioner's father's testimony would demonstrate proved accurate is not what is at issue. Counsel was aware of what would be said and interpreted that testimony as potentially detrimental. Therefore, counsel elected not to call Petitioner's father as a

witness at the suppression hearing. Based upon the facts of this case and as found by the trial court, Petitioner has not demonstrated performance outside the wide range of minimally competent representation. (Ex. 23 at 83a: Min. Entry, May 15, 1984 at para. 3.) Petitioner impliedly admits that counsel made the proper tactical decision when he attempted to have Petitioner's statements suppressed. Further, it appears clear that counsel's attempt to have the statements suppressed was reasonably pursued and adequately handled. Counsel examined the officers about the circumstances of Petitioner's arrest and provided testimony regarding the voluntariness of their admission into Petitioner's residence through the testimony of the individual who indisputably opened the door to the residence. At worst, counsel failed to present evidence of minor corroborative value.

Petitioner also provides no evidence of actual prejudice. There is nothing indicating a reasonable probability that if counsel had called William Gerlaugh to testify at the suppression hearing that Petitioner's confession would have been suppressed.

Petitioner has failed to sustain his burden of proving that he was deprived of the effective assistance of counsel as envisioned by the Sixth Amendment and that such a deprivation prejudiced his case. As such, Petitioner is not entitled to relief on this claim.

### DISCUSSION OF SENTENCING CLAIMS

**Claim 7: Whether being sentenced for felony murder and the underlying felony violates the Double Jeopardy Clause.**

■■■ In claim 7 Petitioner alleges that his sentence for the underlying felonies and for felony murder violates the Double Jeopardy Clause and A.R.S. § 13–116 because the underlying felonies are lesser included offenses of felony murder.[18] The Double Jeopardy Clause prohibits placing anyone in jeop-

---

18. Whether Petitioner's sentence violates A.R.S. § 13–116 alleges an error of state law. A state prisoner is entitled to federal habeas relief only if he is held in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). Federal habeas relief does not lie for errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67–69, 112 S.Ct. 475, 480, 116

L.Ed.2d 385 (1991). The Court notes, however, that *State v. Rumsey,* 130 Ariz. 427, 431, 636 P.2d 1209, 1213 (1981) is on point and holds that a sentence for armed robbery and first degree murder on almost identical facts as the instant case does not violate A.R.S. § 13–116. *See also State v. Runningeagle,* 176 Ariz. 59, 67, 859 P.2d 169, 177 (1990).

ardy of life and limb twice for the same offense. U.S. Const. amend. V. However, the Double Jeopardy Clause does not prevent the imposition of concurrent or consecutive sentences if the state legislative intent is clearly to impose cumulative punishments for the offenses. *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983). Although a state court's conclusion that certain multiple punishments does not constitute double jeopardy does not bind a federal reviewing court, a federal court must accept the state court's interpretation of its own legislative intent for the imposition of multiple punishments. *Id.* at 368, 103 S.Ct. at 679.

In a habeas action the Ninth Circuit Court of Appeals analyzed whether convictions for both robbery and murder in the first degree in the perpetration of robbery pursuant to Nevada law constituted double jeopardy. *Brimmage v. Sumner*, 793 F.2d 1014 (9th Cir.1986). The court reviewed Nevada Supreme Court decisions and determined that Nevada's legislature intended multiple punishment for felony murder and the underlying robbery. *Id.* at 1015. The court, therefore, found no violation of the Double Jeopardy Clause. *Id.* at 1016.

Applying a similar analysis, this Court has reviewed Arizona Supreme Court decisions and finds that Arizona's legislature intended multiple punishment for first degree murder and the underlying felony. In *State v. Rumsey*, 130 Ariz. 427, 431, 636 P.2d 1209, 1213 (1981), Rumsey argued, in a similar fashion to Petitioner, that his consecutive sentences for armed robbery and first degree murder violated the Double Jeopardy Clause, pursuant to *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). The Arizona Supreme Court, distinguishing *Whalen* on the ground that the Arizona legislature specifically permits the imposition of consecutive sentences, found no double jeopardy violation. *Id.; see also State v. Wiley*, 144 Ariz. 525, 541, 698 P.2d 1244, 1260 (1985), *rev'd on other grounds, State v. Superior Court*, 157 Ariz. 541, 760 P.2d 541 (1988) ("Because we find *Pryor* [also cited by Petitioner] inapplicable, we will continue to rely on our earlier holdings that conviction and

sentence for both felony murder and the underlying felony is constitutionally permissible.") (citations omitted); *State v. Girdler*, 138 Ariz. 482, 489, 675 P.2d 1301, 1308 (1984) (holding no double jeopardy violation for consecutive sentences of two felony murder counts and arson count, distinguishing *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), on the grounds that the defendant was convicted of both the greater felony murder crimes and the lesser arson crime during same trial and evidence supported all three convictions); *State v. Lujan*, 124 Ariz. 365, 373, 604 P.2d 629, 637 (1979) (holding burglary and first degree murder are separate offenses of different nature subject to separate punishment); *State v. Jimenez*, 165 Ariz. 444, 460, n. 3, 799 P.2d 785, 801, n. 3 (1990) (same for kidnapping and murder).

■ Given that the Arizona legislature intended first degree murder and the underlying offenses to be subject to multiple punishment, the Court finds that Petitioner's sentence does not violate the Double Jeopardy Clause of the Fifth Amendment. Accordingly, Petitioner is not entitled to relief on claim 7 of his federal amended habeas petition.

**Claim 10: Whether the death penalty is cruel and unusual punishment.**

Petitioner contends that the death penalty is per se cruel and unusual punishment given the limited number of executions. Petitioner further contends that execution by lethal gas is per se cruel and unusual punishment.

The United States Supreme Court has rejected the argument that punishment of death is per se cruel and unusual. *Gregg v. Georgia*, 428 U.S. 153, 176–87, 96 S.Ct. 2909, 2926–32, 49 L.Ed.2d 859 (1976). The Supreme Court has also specifically held that Arizona's death penalty statute is constitutional. *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The Court also finds that execution by lethal gas is not per se cruel and unusual punishment. *See Gray v. Lucas*, 710 F.2d 1048, 1061 (5th Cir.1983), *cert. denied*, 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983); *State v. King*, 180 Ariz. 268, 273–74, 883 P.2d 1024, 1029–30 (1994) (en banc).[19]

19. The Court notes that, pursuant to Arizona's new statute, A.R.S. § 13–704(B), Petitioner can

**Claims 11–13: Whether jury participation in capital sentencing is constitutionally required.**

■ In claims 11 and 13 Petitioner contends that he is constitutionally entitled to have his sentence be determined by a jury or at least have jury participation in his capital sentencing. The United States Supreme Court case of *Walton v. Arizona*, 497 U.S. 639, 647, 110 S.Ct. 3047, 3053–54, 111 L.Ed.2d 511 (1990), is dispositive of these claims. The Court in *Walton* held: " 'Any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has been soundly rejected by prior decisions of this Court.' " *Id.* at 647, 110 S.Ct. at 3054 (quoting *Clemons v. Mississippi*, 494 U.S. 738, 745, 110 S.Ct. 1441, 1446, 108 L.Ed.2d 725 (1990)); *see also Spaziano v. Florida*, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984) (holding Sixth Amendment does not require death sentence to be imposed by a jury). The Ninth Circuit Court of Appeals has also addressed and rejected Petitioner's arguments. *Jeffers v. Lewis*, 38 F.3d 411, 419 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995) (citing *Walton* and finding that judge-only system is constitutional); *Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993) (applying *Richmond v. Lewis*, 948 F.2d 1473, 1481–83 (9th Cir.1990), to reject challenge to Arizona's judge-only sentencing scheme); *Clark v. Rickets*, 958 F.2d 851, 859 (9th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992) (rejecting equal protection argument). Therefore, Petitioner is not entitled to habeas relief based on these claims.

■ In claim 12 Petitioner contends that Article II, Section 23 of the Arizona Constitution creates a liberty interest in jury sentencing which entitles him to habeas relief. Article II, Section 23 specifies that the "right of trial by jury shall remain inviolate," that the number of jurors necessary depends on the authorized sentence and that a unanimous verdict is required in all criminal cases. Section 23 does not specify that a sentence, as opposed to a verdict, must be imposed by a jury.

Although not cited as authority by either party, *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980) controls. In *Hicks*, the Supreme Court recognized that defendants may have a right to protection against arbitrary deprivation of state laws providing procedural rights at sentencing, even if the procedural rights themselves are not constitutionally required. *Id.* at 346, 100 S.Ct. at 2229. The Supreme Court found that Oklahoma Statutes, Title 22, Section 926 (1971), which provides that a convicted defendant is entitled to have his sentence determined by the jury, creates a liberty interest of which the defendant may not be arbitrarily deprived. *Id.* In contrast to the Oklahoma statute, neither Arizona's constitution nor any statute mandates a jury sentence. Petitioner has no state created liberty interest to a sentence determined by a jury. Thus, Petitioner does not state a claim for habeas relief.

**Claim 14: Whether Petitioner has a constitutional right to a proportionality review.**

In claim 14 Petitioner contends that he was denied an adequate proportionality review which is necessary in Arizona because Arizona's sentencing scheme is not constitutionally adequate without such a review. Specifically, Petitioner alleges that the sentencing scheme is inadequate given the "mandatory" nature and judge only sentence determination.[20] In opposition, Respondents argue that proportionality reviews are not required by the federal constitution; therefore, Petitioner has no federal habeas claim.

---

avoid lethal gas as a method of execution by choosing lethal injection or by failing to choose a method at least twenty days before the execution date.

Although not controlling precedent in this district, the Court further notes that a district court in the Northern District of California has held execution by lethal gas is cruel and unusual punishment. *Fierro v. Gomez*, 865 F.Supp. 1387 (1994). An appeal is currently pending before the Ninth Circuit Court of Appeals.

**20.** *See* discussion of claims 11–13 (judge only sentence determination constitutional) *supra* at pp. 1413–1414 and claim 43 (Arizona's death statute not unconstitutionally mandatory) *infra* at p. 1433.

In *Pulley v. Harris,* 465 U.S. 37, 43–44, 104 S.Ct. 871, 875–76, 79 L.Ed.2d 29 (1984), the Supreme Court held that the Eighth Amendment, applicable to the states through the Fourteenth Amendment, does not require a state appellate court to determine whether the sentence imposed is proportional to that imposed in other similar cases. This is true provided the "capital sentencing process contains checks on arbitrariness such as the mitigating and aggravating circumstances." *Neuschafer v. Whitley,* 816 F.2d 1390, 1394 (9th Cir.1987) (citations omitted).

Recently, the Arizona Supreme Court discontinued the practice of conducting proportionality reviews. *State v. Salazar,* 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992). The court found that absent a ruling construing Arizona's constitutional prohibition against cruel and unusual punishment more broadly than its federal counterpart, a capital defendant in Arizona does not have "a separate right to comparative proportionality review on state constitutional grounds." *State v. White,* 168 Ariz. 500, 520, 815 P.2d 869, 889 (1991).

In addition to holding that proportionality reviews were not *required* under state law, the court also determined that they were unnecessary under Arizona's sentencing scheme. The court concluded that proportionality reviews were effectively superfluous in light of the myriad of protections otherwise afforded capital defendants to ensure that arbitrary imposition of the death penalty is unlikely. *Id.* at 520–522; 815 P.2d at 889–91. The court noted that in addition to independently reviewing the record, a death sentence is not imposed unless aggravating factors are found applicable to a defendant's case and no mitigating evidence warrants leniency.

Petitioner also contends that Arizona created a liberty interest in proportionality reviews of which he cannot be arbitrarily deprived. As discussed in relation to claim 12, the Supreme Court in *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980), recognized that state statutes providing procedural rights at sentencing may create liberty interests. *See also Campbell v. Blodgett,* 997 F.2d 512, 522 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1992) (noting same and finding that state statute creat-

ed a liberty interest in having the Washington Supreme Court review and make certain findings whether or not the defendant raised particular issues).

Unlike the Washington Supreme Court in *Campbell,* the Arizona Supreme Court is not statutorily or constitutionally required to conduct a proportionality review. Rather, the idea that the Arizona Supreme Court would review capital sentences "is strictly a judicial invention by which this court assumes authority to modify an otherwise appropriate death penalty in an attempt to ensure that defendants in similar cases receive similar sentences." *State v. White,* 168 Ariz. 500, 517, 815 P.2d 869, 886 (1991) (Corcoran, J., specially concurring). It has also been noted that such reviews were based upon "the mistaken notion that because some other state's statute required [proportionality reviews], so did the United State Constitution." *State v. Salazar,* 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992) (en banc) (Martone, J., specially concurring).

■■■ The Court finds that, in light of the Arizona Supreme Court's finding that proportionality reviews are not and never have been statutorily nor constitutionally required and its explicit finding that defendants may not assert a right to such review under state law, a liberty interest as envisioned by *Hicks* does not exist. Thus, any failure by the Arizona Supreme Court to conduct a proportionality review in this case is, *at most,* an error of state law and may not serve as a basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67–69, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Petitioner, having no constitutional right to a proportionality review, is not entitled to habeas relief based on claim 14.

**Claim 15: Whether Arizona's application of the death penalty is arbitrary and capricious.**

In claim 15 Petitioner contends that the death penalty in Arizona is arbitrarily and capriciously imposed and asks this Court to conduct its own proportionality review. Specifically, Petitioner cites four other murder cases as proof that the death penalty in Arizona is "freakishly" imposed. Citing *Lewis v. Jeffers,* 497 U.S. 764, 778–79, 110

S.Ct. 3092, 3101, 111 L.Ed.2d 606 (1990), Respondents assert that federal courts are not to conduct their own proportionality reviews.

■ Central to any capital sentencing scheme is the principle that a sentence of death cannot be imposed in an arbitrary and freakish manner. *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). This principle requires the sentencing scheme to provide "specific and detailed guidance" to adequately narrow those persons eligible for a sentence of death. *Proffitt v. Florida*, 428 U.S. 242, 253, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913 (1976).

■ In *McCleskey v. Kemp*, 481 U.S. 279, 306, 107 S.Ct. 1756, 1774–75, 95 L.Ed.2d 262 (1987), the petitioner raised the same argument that his death sentence was disproportionate to the sentences in other murder cases. The Court found that a constitutional claim that sentences are disproportionate cannot be based on a comparison of cases in which the defendants did receive the death penalty. *Id.* Further, a constitutional violation cannot be proved by citing cases in which similarly situated defendants did not receive the death penalty, absent a showing that the state's capital sentencing scheme operates in an arbitrary and capricious manner. *Id.* at 306–07, 107 S.Ct. at 1774–75. A sentencing scheme is not rendered arbitrary and capricious by the existence of discretionary action at various stages in the criminal justice system. *Id.* at 307, 107 S.Ct. at 1775. As long as the sentence of death is imposed under a sentencing scheme that focused the sentencer "on the particularized nature of the crime and the particularized characteristics of the individual defendant," the death sentence may be presumed not to be "wantonly and freakishly" imposed and not disproportionate in violation of the Eighth Amendment. *Id.* at 308, 107 S.Ct. at 1775 (quoting *Gregg v. Georgia*, 428 U.S. 153, 206–07, 96 S.Ct. 2909, 2941–42).

The Court has determined that the aggravating circumstances the sentencing court relied on to sentence Petitioner to death furnished sufficient guidance to the sentencer and were not arbitrarily applied. *See* discussion *infra* at pp. 1417–1421. The Court has also found that the state court properly considered all of the mitigation evidence presented by Petitioner. *See* discussion *infra* at pp. 1426–1430. Therefore, given the proper aggravating circumstances and the consideration of all mitigating circumstances, Petitioner's death sentence is presumed not to be "freakishly" imposed. Petitioner is not entitled to habeas relief based on claim 15.

**Claims 16 and 38: Whether Arizona's application of the death penalty is discriminatory.**

■ In claim 16 Petitioner alleges that Arizona's death penalty is discriminately applied because the death penalty is more likely to be imposed if the victim is white and the defendant is a young male from a lower socio-economic background. In claim 16 Petitioner does not allege any specific acts of discrimination against him. Rather, Petitioner requests an evidentiary hearing to establish the racial makeup of homicide victims of defendants sentenced to death and not sentenced to death. The only specific allegation of discrimination against Petitioner is found in claim 38. Therein Petitioner contends that the prosecutor specifically discriminated against him by not offering to him a life-saving plea bargain because Petitioner is half Native American.

To prevail on an equal protection claim, Petitioner must prove "that the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987). The same statistical data Petitioner wishes to gather and introduce in a hearing was rejected by the Supreme Court in *McCleskey* because the statistical evidence did not support an inference of purposeful discrimination in McCleskey's case. *Id.* at 297, 107 S.Ct. at 1769; *see also Richmond v. Lewis*, 948 F.2d 1473, 1490–91 (9th Cir.1992) (holding an evidentiary hearing was properly denied because statistical evidence indicating that Arizona's death penalty is discriminatorily imposed based on race, sex and socio-economic background is insufficient to prove that decisionmakers in petitioner's case acted with discriminatory purpose). Therefore, even if Petitioner could prove statistical disparities, such evidence would not support an inference of purposeful discrimination in his

case. Petitioner's request for an evidentiary hearing is denied.

■ Regarding the one allegation of purposeful discrimination against him, that the prosecution failed to offer him a life-saving plea bargain because of his race, the evidence developed during an evidentiary hearing held in Petitioner's state post-conviction proceeding and the findings of fact made by the judge do not support Petitioner's claim of discrimination.[21] The prosecutor testified at the Rule 32 hearing that he offered codefendant Leisure a plea bargain because the trial court suppressed Leisure's confession leaving the State with a weak case against Leisure. (Ex. 28, R.T. 12/15/83 at 84.) The prosecutor further testified that he did not know Petitioner was half Native American until after Petitioner was convicted and sentenced (*Id.* at 82, 90) and did not consider Petitioner's race in offering any plea bargains. (*Id.* at 89.) The Rule 32 judge specifically found that "there was no evidence that the Petitioner's race was in any way involved in any consideration or decisions by the prosecutor or the Court" and that "the plea offers to other defendants were wholly and completely unrelated to their ethnic origin but had a sound basis in prosecutorial judgment." (Ex. 23, Min. E. at 83b.) These findings of fact are presumed to be correct. 28 U.S.C. § 2254(d). Therefore, Petitioner has failed to prove that the prosecutor acted with a discriminatory purpose by not presenting a plea offer to him.

■ Petitioner's claim of discrimination based on a violation of the Eighth Amendment must also fail. After noting that imperfections and discrepancies among sentences naturally exist in the present criminal justice system, the Supreme Court held that "constitutional guarantees are met when 'the mode [for determining guilt or punishment] itself has been surrounded with safeguards to make it as fair as possible.'" *McCleskey,* 481 U.S. at 313, 107 S.Ct. at 1779 (quoting *Singer v. United States,* 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965)). Given this Court's finding that the death penalty in

Arizona is not arbitrarily and capriciously applied (*see* discussion of claim 15, *supra* at pp. 1415–1416) and given the bifurcated sentencing proceeding and mandatory review by the Arizona Supreme Court, the Court finds that constitutional guarantees are satisfied by Arizona's death penalty sentencing scheme. *See Id.*

**Claims 17 and 31: Whether the aggravating circumstance of "heinous, cruel or depraved" is unconstitutionally vague and whether it was arbitrarily applied to Petitioner.**

Petitioner received the death penalty based in part on the finding that the murder was committed in an "especially heinous, cruel or depraved" manner pursuant to A.R.S. § 13–703(F)(6) [hereinafter (F)(6) factor]. In claims 17 and 31 Petitioner alleges that the (F)(6) factor is unconstitutionally vague on its face and was arbitrarily applied to him.

■ When confronted with a challenge to the constitutionality of an aggravating circumstance for vagueness, the Court must first determine whether the aggravating circumstance is vague on its face and, if so, whether the state courts have defined the vague terms to "provide *some* guidance to the sentencer." *Walton v. Arizona,* 497 U.S. 639, 654, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990); *see also Wade v. Calderon,* 29 F.3d 1312, 1319 (9th Cir.1994). Aggravating circumstances must be defined so that they "genuinely narrow the class of defendants eligible for the death penalty." *Arave v. Creech,* 507 U.S. ——, ——, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188 (1993). The Court's vagueness analysis is necessarily deferential given that "the proper degree of definition of an aggravating factor of this nature is not susceptible [to] mathematical precision." *Tuilaepa v. California,* —— U.S. ——, ——, 114 S.Ct. 2630, 2635, 129 L.Ed.2d 750 (1994) (quoting *Walton,* 497 U.S. at 655, 110 S.Ct. at 3058). If the Court determines that the Arizona Supreme Court has narrowed the definition of the (F)(6) factor, then the sentenc-

---

**21.** Petitioner also requests an evidentiary hearing to develop evidence that the prosecutor acted with a discriminatory purpose when he did not offer Petitioner a life-saving plea bargain even though a plea agreement was entered into with Petitioner's codefendant. Because the state court made findings of fact after holding such an evidentiary hearing, the Court denies Petitioner's request.

ing judges are presumed to have applied the narrowed definition. *Walton,* 497 U.S. at 653, 110 S.Ct. at 3057. Moreover, even if a sentencing judge improperly applied the aggravating factor, the Arizona Supreme Court may review the evidence to determine whether the properly narrowed aggravating factor is supported by the evidence. *Id.* at 654, 110 S.Ct. at 3057.

The parties do not dispute, and it has been found, that the (F)(6) factor is constitutionally vague on it face. *Walton,* 497 U.S. at 654, 110 S.Ct. at 3057. However, the Supreme Court has held that "especially heinous, cruel or depraved" has been adequately construed by the state courts such that the sentencer's discretion is narrowed. *Id.* at 654–55, 110 S.Ct. at 3057–58. Following *Walton* the Supreme Court again found that the (F)(6) factor, as it has been construed by the Arizona Supreme Court, adequately channels the sentencer's discretion in *Lewis v. Jeffers,* 497 U.S. 764, 777–78, 110 S.Ct. 3092, 3100–01, 111 L.Ed.2d 606 (1990). *See also Chaney v. Lewis,* 801 F.2d 1191, 1195 (9th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987).

Petitioner, relying on dicta in *Richmond v. Lewis,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), contends that the Supreme Court has specifically held that *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), was the first time Arizona adequately narrowed the (F)(6) factor. Petitioner further contends that his death sentence is unconstitutional because the trial court sentenced him prior to *Gretzler* being decided and the Arizona Supreme Court did not mention *Gretzler* when it affirmed Petitioner's death sentence. (Resp. Mot. Summ. J. at 113.) First, the Court disagrees that *Richmond* holds that the (F)(6) aggravating factor was constitutionally vague prior to *Gretzler.* Rather, the Supreme Court decided only whether a majority of the Arizona Supreme Court properly reweighed the ag-

gravating circumstances against the mitigating circumstances after invalidating one aggravating circumstance. *Richmond,* 506 U.S. at ——, 113 S.Ct. at 537. Moreover, this Court has rejected a similar argument that the (F)(6) factor was unconstitutionally vague prior to *Gretzler* being decided in *Woratzeck v. Lewis,* 863 F.Supp. 1079, 1086 (D.Ariz.1994).[22]

█ In any event, the Arizona Supreme Court affirmed Petitioner's sentence after it decided *Gretzler·* and is presumed to have applied the properly narrowed (F)(6) factor even if the court did not specifically cite *Gretzler. Walton,* 497 U.S. at 653, 110 S.Ct. at 3057; *see also Jeffers v. Lewis,* 38 F.3d 411, 415 (9th Cir.1994). Moreover, the concurring opinion set forth in more detail the Arizona Supreme Court's reasons for affirming Petitioner's sentence and specifically cited *Gretzler. State v. Gerlaugh,* 135 Ariz. 89, 90, 659 P.2d 642, 643 (1983).[23]

█ Because the Court has found that the (F)(6) factor is not unconstitutionally vague, Petitioner's argument that the sentencing court arbitrarily applied the aggravating factor in his case is essentially an argument that the sentencing court misapplied the factor to the facts of his case. Given that state law errors do not warrant the granting of federal habeas relief, *Estelle v. McGuire,* 502 U.S. 62, 72–73, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991), the Court's review is limited to determining whether the sentencing court's application of the constitutionally narrowed factor was so arbitrary and capricious that it amounts to a due process violation. *Jeffers,* 497 U.S. at 780, 110 S.Ct. at 3102. The appropriate standard of review is whether in " 'viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the [aggravating factors] beyond a reasonable doubt.' " *Jeffers,* 497 U.S. at 781, 110 S.Ct. at 3102 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct.

---

**22.** The Court notes that the Arizona Supreme Court is currently considering the issue of whether the (F)(6) factor was adequately narrowed prior to *Gretzler* in *Arizona v. Mata,* No. CR–77–4104–AP/PC. *See* Order filed July 6, 1995.

**23.** In a similar fashion to Petitioner, the defendant in *Jeffers* was sentenced prior to the time

the Arizona Supreme Court decided *Gretzler,* and the Arizona Supreme Court affirmed Jeffers' sentence citing *Gretzler. State v. Jeffers,* 135 Ariz. 404, 430, 661 P.2d 1105, 1131 (1983); *Jeffers v. Lewis,* 38 F.3d 411, 414 (1994).

2781, 2789, 61 L.Ed.2d 560 (1979)). Moreover, in cases where the evidence is unclear or would support conflicting inferences, "the federal court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.'" *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992), *cert. denied*, — U.S. ——, 114 S.Ct. 131, 126 L.Ed.2d 94 (1993) (quoting *Jackson v. Virginia*, 443 U.S. at 326, 99 S.Ct. at 2793). Whether this Court would agree with the finding is irrelevant; it is strictly whether *any* rational factfinder could have found that the evidence supports the aggravating circumstance. *See Id.*

▮ The trial court made the following finding in its Special Verdict:

6. Based upon the evidence produced at trial and the statements which you made, the Court finds that the Defendant committed the offense in an especially heinous, cruel, or depraved manner. The crime and particularly the manner of its commission was shockingly evil and grossly bad as well as being marked by debasement and perversion. The fact that you would attempt to run over the victim and in fact run over the victim with an automobile on more than one occasion and thereafter stab the victim with a screw driver and inflict multiple wounds on different parts of the body is adequate evidence of debasement, perversion and is clearly shockingly evil. The fact that there was clearly mental and physical distress visited upon the victim as a result of being dragged to the roadway while you drove the car over him on more than one occasion clearly shows that the manner of the commission of the offense was disposed to inflict pain in a wanton, vindictive and sadistic manner. I can not imagine any greater mental and physical distress being imposed on a victim than being dragged to a roadway and observing a car being driven toward him and in fact striking him and having that repeated.

(Ex. 2, Min. E. at 38a–38b.) The Arizona Supreme Court in its supplemental opinion found that the (F)(6) factor was supported by an abundance of evidence, and the concurring opinion in more detail discussed the evidence that supported a finding that the murder was carried out in an especially cruel manner. *State v. Gerlaugh*, 135 Ariz. 89, 89–90, 659 P.2d 642, 642–43 (1983).

In light of Petitioner's own confession, his allegations in his response that he did not stab the victim and that he *only* drove the car over the "body of the victim" is disingenuous and misleading. Petitioner admitted that he participated in the ten to fifteen minute beating, that he drove the car over the victim several times one time stopping the back wheel on the victim and revving the engine, and that he afterwards stabbed the victim because the victim was still alive. Given this evidence, the Court finds that the sentencing judge's and the Arizona Supreme Court's findings that Petitioner committed the murder in a especially heinous, cruel or depraved manner is one that a rational factfinder could have made. Moreover, a rational factfinder could convincingly find that the victim suffered both mentally and physically given the evidence that, after being beaten for ten to fifteen minutes and after being run over several times by his car, the victim asked the three codefendants why they were doing this to him. *See also Lewis v. Jeffers*, 497 U.S. at 783–84, 110 S.Ct. at 3103. Therefore, Petitioner is not entitled to habeas relief based on claims 17 and 31.[24]

**Claims 18 and 29: Whether the aggravating circumstance of pecuniary gain is unconstitutionally vague and whether it was arbitrarily applied to Petitioner.**

▮ Petitioner alleges that the pecuniary gain aggravating factor, A.R.S. § 13–703(F)(5), is unconstitutionally vague and overbroad because: (1) the factor can be applied to both murders for hire and murders that occur during the course of a robbery, and (2) the factor could be applied to sentence every defendant to death who was convicted of a murder which occurred during a robbery. As stated above, when faced with such a vagueness challenge, the Court must

---

24. Petitioner's argument that his sentence is unconstitutional because there is no indication of how the state courts defined "heinous, cruel or depraved" in his case must also fail given *Walton* and *Jeffers*.

determine whether the aggravating circumstance is vague on its face and, if so, whether the state courts have adequately defined the circumstance to provide guidance to the sentencer. *Walton v. Arizona,* 497 U.S. 639, 654, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990); *see also Wade v. Calderon,* 29 F.3d 1312, 1319 (9th Cir.1994).

■ Petitioner's first argument has been previously addressed by this Court in *Woratzeck v. Lewis,* 863 F.Supp. 1079, 1088 (D.Ariz.1994). Therein the Court held that, unlike the (F)(6) factor, the pecuniary gain factor is not constitutionally vague on its face and that the Arizona Supreme Court adequately construed the pecuniary gain factor to apply not only to murder for hire situations but also to any murder committed for financial gain. *Id.* (citing *State v. Clark,* 126 Ariz. 428, 436, 616 P.2d 888, 896 (1980), *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Therefore, the pecuniary gain factor is not unconstitutionally vague because it applies to both contract murders and murders committed in the course of a robbery.

■ Petitioner's second argument, that the (F)(5) factor is vague and overbroad because any murder committed during the course of a robbery is death eligible, is also unpersuasive. Prior to Petitioner being sentenced, the Arizona Supreme Court held that the (F)(5) pecuniary gain factor applies only to those cases wherein the defendant was motivated by financial gain to commit the murder, not those cases wherein financial gain was merely accidental or the result. *State v. Madsen,* 125 Ariz. 346, 353, 609 P.2d 1046, 1053, *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980); *see also, State v. Wallace,* 151 Ariz. 362, 368, 728 P.2d 232, 238 (1986), *cert. denied,* 483 U.S. 1011, 107 S.Ct. 3243, 97 L.Ed.2d 748 (1987). Therefore, a defendant found guilty of murder committed during the course of a robbery does not necessarily qualify for the death penalty pursuant to the pecuniary gain factor. The Court finds that a sentencer's discretion is adequately narrowed and that the (F)(5) pecuniary gain factor is not unconstitutionally vague or overbroad.

■ Petitioner next contends that the pecuniary gain factor was arbitrarily applied to

him given the lack of evidence that the killing was motivated by financial gain. The Court, having found the (F)(5) factor to be valid, is limited to determining whether the sentencing court's application of the pecuniary gain factor was so arbitrary and capricious that it amounts to a due process violation. *Lewis v. Jeffers,* 497 U.S. at 780, 110 S.Ct. at 3102.

In its Special Verdict the sentencing court found:

> 5. Based upon the recent decisions of the Supreme Court of the State of Arizona interpreting this aggravating circumstance and the fact that the evidence at trial clearly shows that you intended to obtain and did obtain money from the victim as well as the victim's automobile, the Court finds that the Defendant did commit the offense as consideration for the receipt or in the expectation of the receipt of something of pecuniary value.

(Ex. 2, Min. E. at 38a.) Petitioner's confession supports the sentencing court's finding. Petitioner stated that he, Encinas and Leisure were hitchhiking with the intent to rob whoever offered them a ride. (Ex. 13, R.T., 12/17/80 at 83, 101.) Petitioner also stated that after the beating he decided to kill the victim to ensure that they could not be identified for the robbery; therefore, he ordered Encinas and Leisure to drag the victim onto the road while he went to the car. (*Id.* at 87.) This evidence is in direct conflict with Petitioner's allegations that "there was no evidence that the killing was done for financial motivation. The taking of the wallet, if done, was an afterthought." (Pet. at 39.) Upon review of the record, the Court is satisfied that a rational factfinder could have found beyond a reasonable doubt that the robbery was the motivation behind the murder. The (F)(5) pecuniary gain circumstance was appropriately applied in this case.

■ Finally, Petitioner argues that the fact that he killed to eliminate the witness to the robbery was "double counted" to satisfy both the (F)(6) factor and (F)(5) factor. The case cited by Petitioner, *State v. Marlow,* 163 Ariz. 65, 786 P.2d 395 (1989), does not support his argument that "[i]mposition of the death penalty cannot be based on a finding of aggravating · circumstances under A.R.S.

§ 13–703(F)(5) (pecuniary gain) and (F)(6) (cruel, heinous or depraved) when those findings rest on the same underlying factors." (Resp. Mot. Summ. J. at 71.) The Arizona Supreme Court in *Marlow* stated as dicta in a footnote that a trial court may use the same evidence to satisfy more than one aggravating circumstance; however, the court may only weigh the evidence once. *Id.* at 70, n. 2; 786 P.2d at 400, n. 2. Based on the relevant portions of the Special Verdict quoted above, the Court disagrees that the sentencing court "double counted." The court looked at the manner in which Petitioner killed the victim when it determined whether the (F)(6) factor had been met; Petitioner's motive for the killing supported the (F)(5) factor. Therefore, Petitioner is not entitled to habeas relief on these claims.

**Claims 19 and 27: Whether the State must prove and the trial court find that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt.**

Petitioner contends that the Constitution requires the State to prove and the sentencing court to find that the aggravating factors outweigh the mitigating factors based upon proof beyond a reasonable doubt, given the higher degree of reliability required in a death penalty case. Respondents counter that the Constitution does not mandate the burden of proof required to impose the death penalty.

Contrary to Petitioner's argument, the United States Supreme Court held in *Tuilaepa v. California*, ── U.S. ──, ──, 114 S.Ct. 2630, 2638, 129 L.Ed.2d 750 (1994), that a "capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." The Ninth Circuit has also held that a determination of whether the death penalty should be imposed is not subject to the beyond-a-reasonable-doubt standard. *Harris v. Pulley*, 692 F.2d 1189, 1194–95 (9th Cir.1982) *rev'd on other grounds*, 465 U.S. 37, 41 n. 4, 104 S.Ct. 871, 874 n. 4, 79 L.Ed.2d 29 (1984) (noting, without disapproving, the Ninth Circuit's holding that no reasonable doubt finding is required for the imposition of the death penalty). Therefore, the Court finds no error in the sentencing court not stating it had found by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances when it sentenced Petitioner.

Petitioner's representations to this Court regarding whether the Constitution requires aggravating factors outweigh mitigating factors by proof beyond a reasonable doubt are inaccurate. In Petitioner's response to the motion for summary judgment, Petitioner states:

Petitioner reiterates here his position that the United States Constitution requires that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt. *Smith v. North Carolina*, 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed.2d 622 (1984) (Stevens, J.). There is no authority to the contrary and cases cited by Respondent demonstrate precisely this. *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1982) is inapposite for two reasons. First, it preceded the rule in *Smith v. North Carolina, supra* by two years and hence is not controlling. Second, its holding, is by its terms, case specific and no analysis of whether beyond a reasonable doubt proof was required was ever done. Nor does *Harris v. Pulley*, 692 F.2d 1189 (9th Cir.1982) *rev'd.* 465 U.S. 37 [104 S.Ct. 871, 79 L.Ed.2d 29] (1984) dispose of the issue. First, the case is reversed. Second, the "holding" was merely the Ninth Circuit opining that the U.S. Supreme Court had as yet never held that the beyond reasonable doubt standard was constitutionally required.

In truth, *Smith v. North Carolina, supra*, does require it, as does that body of case law requiring a higher degree of reliability in death penalty sentencing schemes compared to other penalties. *Lockett v. Ohio*, 438 U.S. [586] 576, 604, 98 S.Ct. 2954, 2964 [57 L.Ed.2d 973] (1978) and progeny.

(Resp. Mot. Summ. J. at 74–75.)

*Smith v. North Carolina* is Justice Steven's dissent to the Supreme Court's denial of a writ of certiorari. As such, *Smith* does not and cannot establish a rule of law, has no precedential value to this case and cannot overturn any other holding. Notwithstanding the foregoing, Petitioner goes on to argue

that *Harris v. Pulley* was reversed and would no longer apply to this issue. *Harris v. Pulley* was reversed only in part and on other grounds. The Supreme Court reversed the Ninth Circuit's holding that a proportionality review must be conducted in California; that a jury need not be instructed that it must find by proof beyond a reasonable doubt that aggravating factors outweigh mitigating factors remains viable law. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

**Claim 20: Whether it is unconstitutional to require the defendant to prove the existence of mitigating circumstances.**

Petitioner alleges in claim 20 that Arizona's death penalty statute unconstitutionally shifts the burden to the defendant to prove the existence of mitigating circumstances. Respondents, however, contend that the United States Supreme Court has rejected this claim citing *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

■ The Court agrees with Respondents that it is constitutionally permissible to require a defendant prove the existence of mitigation circumstances as prescribed by A.R.S. § 13–703(C). *Id.* at 649–51, 110 S.Ct. at 3054–56. Specifically, the plurality opinion written by Justice White and joined by Justices Rehnquist, O'Connor, and Kennedy held that a state's death penalty statute may constitutionally shift the burden to defendant to prove mitigating circumstances provided the statute does not lessen the State's burden to prove aggravating circumstances. *Walton*, 497 U.S. at 650, 110 S.Ct. at 3055. The plurality continued that *Lockett* and its progeny does not foreclose a state from specifying how mitigating factors are to be proved. *Id.* at 649, 110 S.Ct. at 3054–55. Justice Scalia wrote a separate opinion concurring in judgment and stating that the claim in Part III, if correct, does not state an Eighth Amendment violation. *Id.* at 674, 110 S.Ct. at 3068. Therefore, a majority of the Court has approved of requiring the defendant to prove the existence of mitigating circumstances.

Following *Walton*, the Ninth Circuit Court of Appeals has also rejected a claim that Arizona's death penalty statute should require the state to prove beyond a reasonable doubt the absence of mitigating factors. *Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir.1992), *cert. denied,* ─ U.S. ─, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993); *see also Richmond v. Lewis*, 948 F.2d 1473, 1482 (9th Cir.1992), *rev'd on other grounds,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992) (following *Walton* rejected claim that burden is impermissibly shifted to defendant to prove mitigating factors).

The Court finds Petitioner's constitutional rights have not been violated by his having to prove the existence of mitigating circumstances and is not entitled to habeas relief based on claim 20.

**Claim 21: Whether Arizona's sentencing scheme lacks standards for weighing aggravating and mitigating circumstances.**

In this claim petitioner contends that A.R.S. § 13–703 fails to set forth any standards to guide the sentencer in imposing the death penalty, specifically in weighing the aggravating and mitigating circumstances. Petitioner further reiterates his allegations that the death penalty in Arizona is arbitrarily and capriciously applied, that the (F)(5) and (F)(6) factors are vague and that those factors were arbitrarily applied to him.

■ The Supreme Court has held that the Constitution requires the capital statute to narrow those eligible for the death penalty. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, the sentencer is to have wide discretion in determining of those eligible who will actually receive the death penalty. *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). Therefore, the Supreme Court has held that the "capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." *Tuilaepa v. California,* ─ U.S. ─, ─, 114 S.Ct. 2630, 2638, 129 L.Ed.2d 750 (1994); *see also, Zant v. Stephens*, 462 U.S. 862, 875, 103 S.Ct. 2733, 2741, 77 L.Ed.2d 235 (1983) (approving Georgia's capital statute even though it did not guide a jury's consideration of aggravating and mitigating circumstances). The Court has already found against Petitioner on the remaining claims. *See* discussions of claims 15

(death penalty not arbitrarily applied in Arizona), 17 and 31 ((F)(6) factor not vague or arbitrarily applied) and 18 and 29 ((F)(5) factor not vague or arbitrarily applied) *supra* at pp. 1415–1416, 1417–1419, 1419–1421, respectively. Therefore, the Court finds that Petitioner cannot prevail on claim 21.

**Claims 22 and 25: Whether the sentencing scheme allows the sentencing court to consider evidence that is not subject to the rules of evidence and whether the court did improperly consider such evidence.**

In these two claims Petitioner contends that the sentencing scheme is unconstitutional because it allows the sentencing court to consider evidence that is not subject to the rules of evidence. Petitioner further argues that he was denied his right to confront witnesses when the sentencing court considered inadmissible evidence to sentence him to death, specifically the presentence investigation reports, the testimony of an hypnotized witness and codefendant Encinas' confession. In opposition, Respondents contend that Petitioner has not proven the court considered any improper evidence by indicating where in the record this may have occurred. Further, Respondents contend that the trial court found the existence of aggravating circumstances based on properly admitted evidence—the judicial notice of Petitioner's prior criminal conviction, Petitioner's own confession and medical testimony.

Petitioner's first argument, that the sentencing scheme allows the trial court to consider evidence that is not admissible pursuant to the Rules of Evidence, is unpersuasive. Arizona Revised Statutes, section 13–703(C) provides in part that "the admissibility of information relevant to any of the aggravating circumstances ... shall be governed by the rules governing the admission of evidence at criminal trials." Although Petitioner admits § 13–703(C) requires the court to consider only properly admitted evidence to prove aggravating circumstances, he argues that *State v. Ortiz,* 131 Ariz. 195, 208, 639 P.2d 1020, 1033 (1981), *cert. denied,* 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863

(1982), expanded what evidence may be considered by the sentencing court. Petitioner misinterprets *Ortiz.* The Arizona Supreme Court in *Ortiz* considered only whether the prosecution may present any evidence to rebut the defendant's evidence relevant to mitigating circumstances. Arizona Revised Statutes, Section 13–703(C) does not set forth whether rebuttal evidence is subject to rules of evidence regarding the admissibility of evidence. Therefore, Petitioner has not shown that Arizona's sentencing scheme violates the Constitution regarding the admissibility of evidence regarding aggravating circumstances.

*Paradis v. Arave,* 20 F.3d 950 (9th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995) is dispositive of Petitioner's second argument, that the sentencing court violated his Sixth Amendment right to confront witnesses by considering improper evidence to determine the existence of aggravating circumstances. In *Paradis,* Paradis similarly contended that he was denied his right to confront witnesses because the sentencing judge considered hearsay evidence in sentencing him. *Id.* at 956. The Ninth Circuit Court of Appeals held that Paradis failed to show that the judge considered any improper evidence in arriving at the sentence. *Id.* The Ninth Circuit went on to distinguish *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)[25], on the ground that the judge specifically *stated* that he relied on information *undisclosed* to Gardner in determining Gardner's sentence. *Id.* To the contrary, the judge, when sentencing Paradis, listed what he had considered and did not include the improper evidence of which Paradis was complaining. *Id.*

Similarly, Petitioner merely claims that the sentencing court considered evidence that was not properly before the court to support its findings of aggravating circumstances, but Petitioner does not cite to the record to support his contention or otherwise meet his burden of proof. *Paradis,* 20 F.3d at 956; *see also McKenzie v. McCormick,* 27 F.3d 1415, 1418–20 (9th Cir.1994), *cert. denied,* —

**25.** In *Gardner,* 430 U.S. at 362, 97 S.Ct. at 1206–07, the Supreme Court held Gardner was denied his right to due process when the judge considered portions of the presentence report which were undisclosed to Gardner and which Gardner had no opportunity to explain or rebut.

U.S. ——, 115 S.Ct. 916, 130 L.Ed.2d 797 (1995) (holding that petitioner has burden of proving consideration of improper evidence). Additionally, the Court has reviewed the record and has found nothing to indicate that the sentencing court considered any improper evidence. Again, just as the judge in *Paradis* listed what he considered, the court in its Special Verdict listed what was considered in determining the appropriate sentence for the murder conviction:

> In determining the sentence in this case for Count III the Court has considered the Presentence Investigation Report for the purpose of determining any other mitigating factors or circumstances, has reviewed the file and considered the testimony at the trial, the matters presented at the Presentence Hearing and the statements made by counsel both at the Presentence Hearing and today.

(Ex. 2 at 38c.) According to the Special Verdict, the court found the existence of the aggravating circumstances based on its judicial notice of the file in Cause No. 103047 and the evidence presented during the trial concerning Petitioner's intent to kill the victim to eliminate the witness to the robbery and the evidence of the manner in which the victim was killed. (Ex. 2 at 38–38b.) Petitioner's own confession and the medical testimony easily supported the court's finding that the (F)(5) and (F)(6) factors existed. The limited testimony of Mr. Roche of events that occurred after the murder could not have been used to support the court's finding of any aggravating circumstance.

Moreover, during his first Rule 32 post-conviction proceeding, Petitioner raised this issue and the trial judge reiterated what he considered to support his findings of aggravating circumstances: "With regard to the issue raised under 2.3.3, the Court did not consider the testimony of Harvey Roche, nor the confession of Joseph Encinas in making its findings of the aggravating circumstances. No impermissible evidence was considered." (Ex. 23, Min. E. at 83a.)

Thus, the Court finds that Petitioner has failed to prove claims 22 and 25.

### Claims 23 and 42: Whether a jury finding of intent to kill is constitutionally required.

In claims 23 and 42 Petitioner contends that he is constitutionally entitled to have a jury make the requisite *Enmund* finding that he killed, attempted to kill or intended to kill. Petitioner further contends that the single verdict form for first degree murder that did not require the jury to differentiate between premeditation and felony murder prevented a determination of whether or not a jury had unanimously found that Petitioner intended to kill.[26]

The United States Supreme Court in *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376–77, 73 L.Ed.2d 1140 (1982), held that the Eighth Amendment forbids the execution of one convicted of first degree murder under the felony murder doctrine absent a finding that the defendant did kill, attempt to kill or intend to kill. Also, those defendants whose participation in the felony is major and whose mental state is one of "reckless indifference to the value of human life" satisfy the *Enmund* culpability requirement; therefore, the death penalty is constitutionally appropriate. *Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987). Reckless indifference to human life is "implicit in knowingly engaging in criminal activities known to carry a grave risk of death." *Id.* at 157, 107 S.Ct. at 1688.

The Supreme Court in *Cabana v. Bullock*, 474 U.S. 376, 384, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986), held that the requisite finding that the defendant killed, attempted to kill or intended to kill need not be made by a jury. The Constitution is satisfied as long as a state court, be that an appellate court or a trial court, makes the appropriate *Enmund* factual finding of culpability. *Id.* at 386–87, 106 S.Ct. at 697. Such factual finding "must be presumed correct by virtue of 28 U.S.C. § 2254(d), and unless the habeas petitioner can bear the heavy burden of overcoming the presumption, the court is obliged to hold that the Eighth Amendment as interpreted in *Enmund* is not offended by the

---

**26.** The Court in claim 3 *supra* at pp. 1406–1407 determined that the use of the single verdict form

for first degree murder was constitutional.

death sentence." *Id.* at 388, 106 S.Ct. at 698 (citations omitted).

■ In the present case, the trial court found that the "defendant could clearly have foreseen that his conduct in the course of the commission of these offenses would cause or create a risk of causing death to another person and in fact stated that he intended to cause the death of the victim." (Ex. 17, R.T., 2/11/81 at 14–15.) As part of the court's ruling on Petitioner's first Rule 32 petition, the court found that "all of the trial testimony and Petitioner's own statement provided sufficient evidence for a finding beyond a reasonable doubt that the Defendant intended to kill the victim." (Ex. 23, Min. E. at 83a.) Therefore, it is clear, and Petitioner does not contest, that the trial court made the appropriate *Enmund* findings. Because the Constitution does not require a jury to make these findings, Petitioner is not entitled to habeas relief based on claims 23 and 42.

**Claim 24: Whether Petitioner's sentence is unconstitutional given the trial court's failure to instruct the jury on second degree murder.**

Petitioner contends that the trial court's failure to instruct the jury on the lessor included offense of second degree murder precludes the imposition of the death penalty. Petitioner argued in claim 4 that his conviction was unconstitutional because the trial court failed to so instruct the jury. In claim 4 the Court found that Petitioner was not lawfully entitled to a lesser included offense instruction. *See supra* at pp. 1407–1409. Therefore, Petitioner's sentence is, likewise, not unlawful.

**Claim 26: Whether Petitioner's confession was improperly considered during sentencing.**

In claim 26 Petitioner contends the sentencing court's consideration of his confession, which was obtained in violation of his Fourth Amendment rights, is improper and violates his Eighth Amendment rights. This sentencing claim, which Petitioner characterizes as an Eighth Amendment claim, is in actuality a Fourth Amendment claim because the claims are not distinct either in nature or in the requisite elements of proof. *Cf. Kimmelman v. Morrison,* 477 U.S. 365, 374–75, 106 S.Ct. 2574, 2582–83, 91 L.Ed.2d 305

(1986) (finding petitioner's Fourth Amendment claim and Sixth Amendment claim are distinct and have separate elements of proof; therefore, the court could decide the Sixth Amendment claim). In fact, Petitioner's argument is primarily a cross reference to claim 1. Fourth Amendment claims are not subject to federal habeas review if the Petitioner has had a full and fair opportunity to litigate the claim in state court pursuant to *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 3052–53, 49 L.Ed.2d 1067 (1976). *See* discussion of claim 1 *supra* at pp. 1397–1400. As the Court found in claim 1, Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim. Therefore, Petitioner's Fourth Amendment claim is not subject to this Court's review.

■ Petitioner's other contention, that *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), holds that the introduction of evidence to support a sentence of death must meet a higher standard than if introduced to support a conviction, is without merit. The *Beck* decision does not discuss Petitioner's contention or support his argument. Rather, the Supreme Court held in *Beck* that the death penalty may not be constitutionally imposed when the jury was not allowed to consider whether the defendant may be guilty of a lesser included non-capital offense when the evidence would have supported such a verdict. *Id.* at 627, 100 S.Ct. at 2384. The Court agrees with Respondents that the Constitution does not require a higher standard for the consideration of evidence during capital sentencing than during guilt determination.

**Claims 28 and 30: Whether the existence of the aggravating circumstances was proved beyond a reasonable doubt.**

State law requires the existence of aggravating factors be proved beyond a reasonable doubt. *State v. Jordan,* 126 Ariz. 283, 286, 614 P.2d 825, 828 (1980), *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). Because neither the sentencing court nor the Arizona Supreme Court explicitly recited that they found the (F)(5) and (F)(6) factors existed by proof beyond a reasonable doubt, Petitioner argues his sentence must be overturned. In opposition, Respondents

contend that Petitioner's claim is not subject to habeas review because it is a claim of state error and that, despite this fact, Petitioner's claim was rejected in *Clark v. Ricketts*, 958 F.2d 851, 859–60 (9th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992).

The same argument was presented to this Court in *Woratzeck v. Lewis*, 863 F.Supp. 1079, 1088–90 (D.Ariz.1994). In *Woratzeck* the Court first analyzed whether the Constitution requires aggravating circumstances be proven beyond a reasonable doubt. Analogizing aggravating factors in capital sentencing cases to sentencing enhancements under the Federal Sentencing Guidelines, this Court found that the Constitution does not require aggravating factors be proven beyond a reasonable doubt. *Id.* at 1089 (citing *United States v. Restrepo*, 946 F.2d 654, 656 (9th Cir.1991) (en banc), *cert. denied*, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992) ("sentencing factor" is not an element, thus heightened standard of proof not required)); *see also Bonin v. Vasquez*, 807 F.Supp. 589, 622 (C.D.Cal.1992), *aff'd, Bonin v. Calderon*, 59 F.3d 815 (9th Cir.1995) (applying same analogy and finding no federal constitutional requirement that aggravating factors be proven beyond a reasonable doubt).

In the alternative, the Court in *Woratzeck* applied the holding and rationale of *Clark* and found that the trial and appellate court had applied the standard set forth in *Jordan* even though neither court specifically recited the standard in relationship to the aggravating factors. 863 F.Supp. at 1089–90. In *Clark*, 958 F.2d 851, 860 (9th Cir.1992), the Ninth Circuit stated that the "Arizona Supreme Court having independently reviewed the facts in Clark's case and having concluded that the aggravating circumstances had been 'established,' it is ludicrous to suggest the court did not find the aggravating circumstances established according to the standard it so recently announced in *Jordan*."

■ In the present case the Court follows its finding in *Woratzeck* and the finding in *Bonin* that the Constitution does not require in capital cases that aggravating factors be proven beyond a reasonable doubt. Petitioner's claim, therefore, is a claim of state error not cognizable in this federal habeas proceeding. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–69, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (holding that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"). As in *Clark* and *Woratzeck* the Court finds, in the alternative, that the state trial and appellate courts are presumed to have followed *Jordan* and, thus, to have found the existence of the aggravating factors beyond a reasonable doubt. In fact, the trial court in the Rule 32 proceeding stated that "the aggravating factors found by this Court were proven well beyond a reasonable doubt." (Ex. 23, Min. E. at 83c.) Accordingly, Petitioner is denied habeas relief based on claims 28 and 30.

**Claims 32–37 and 44: Whether the sentencing court failed to consider certain mitigating circumstances presented by Petitioner.**

In claims 32 through 37 and 44, Petitioner asserts that he is entitled to habeas relief because the trial court failed to consider certain mitigating circumstances presented by him at sentencing. Specifically, Petitioner contends that the trial court failed to consider evidence of his age, intoxication, cooperation with police, lack of specific intent, good character and the life sentences of his codefendants. Respondents counter that the trial court did *consider* all the evidence Petitioner presented in mitigation, but merely did not find that Petitioner had proved the mitigating circumstance sufficiently substantial to warrant leniency. Further, Respondents argue that the sentencing judge in Petitioner's first Rule 32 proceeding found that he had *considered* all the mitigating evidence presented by Petitioner and that these findings are entitled to a presumption of correctness pursuant to *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983).

■ The United States Supreme Court has consistently held that a sentencer must consider *any* relevant evidence offered by a capital defendant in support of a sentence less than death. *Eddings v. Oklahoma*, 455 U.S. 104, 113–14, 102 S.Ct. 869, 876, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S.

586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978); *see also Boyde v. California,* 494 U.S. 370, 377–78, 110 S.Ct. 1190, 1196–97, 108 L.Ed.2d 316 (1990). The sentencer is not, however, required to find the proffered evidence mitigating, nor must the sentencer accord the evidence the weight a defendant believes is appropriate. *Eddings,* 455 U.S. at 114–15, 117, 102 S.Ct. at 876–77, 878.

A.) *Age:*

■ In claims 32 and 33, Petitioner argues that the sentencing court refused to find his age and immaturity mitigating and that the appellate court affirmed his sentence based on the mistaken belief that the sentencing court considered such evidence. At sentencing the court stated:

> 5. Although the defendant was 19 years of age at the time of the commission of this offense which in and of itself might constitute a mitigating factor, with regard to this Defendant, however, based on his life experience at the time of the commission of this offense and his level of maturity, the Court does not find that the Defendant's age or his life experience at that age constitute a mitigating circumstance in connection with the commission of this crime.

(Ex. 2, P.I. at 38c.) At the Rule 32 postconviction relief proceeding, the court found that it had considered Petitioner's age at sentencing. (Ex. 23, Min. E. at 83b.) This finding in the Rule 32 proceeding is presumed to be correct. 28 U.S.C. § 2254(d). Based on the sentencing court's statements, the Court finds that the sentencing court clearly considered Petitioner's age and level of maturity.

B.) *Intoxication:*

In claim 34 Petitioner argues that the sentencing court did not adequately consider evidence of his intoxication as a mitigating circumstance. Evidence of the amount of alcohol Petitioner consumed prior to the murder was introduced at the trial and was discussed in the presentence report. The sentencing court stated that it had considered all the evidence introduced at trial and the mitigating evidence contained in the presentence reports. (Ex. 2, P.I. at 38c.) The sentencing court found that the "Defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was not significantly impaired." (*Id.* at 38b.) During the Rule 32 proceeding the court stated that it had considered all the evidence presented concerning Petitioner's intoxication but did not find Petitioner so intoxicated as to constitute a mitigating circumstance. (Ex. 23, Min. E. at 83b.) The Court finds that the sentencing court considered the evidence of intoxication at sentencing.

Petitioner further argues that, even if the sentencing court considered Petitioner's intoxication as a statutory mitigating circumstance, the court did not consider the intoxication as a non-statutory mitigating circumstance. Because the Court found that the sentencing court considered intoxication as mitigating evidence, this argument is without merit. Petitioner has also failed to present any evidence to support this allegation.

■ Finally, Petitioner contends that the record is void of any indication that the sentencing court weighed all of the evidence offered in mitigation collectively against the aggravating circumstances as required by *Smith v. McCormick,* 914 F.2d 1153, 1168–69 (9th Cir.1990).[27] In response, Respondents contend that due process does not require the sentencing court to document thoroughly its entire analysis of mitigating circumstances and that the instant case is distinguishable from *Smith.*

The Court agrees with Respondents. The Ninth Circuit has recently held that no itemization or discussion of all mitigating evidence is required under Arizona state law or the federal constitution. *Jeffers v. Lewis,* 38 F.3d 411, 418 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570; *see also Woratzeck v. Lewis,* 863 F.Supp.

---

**27.** Petitioner also relies heavily on *Jeffers v. Lewis,* 974 F.2d 1075 (9th Cir.1992) to support this argument. A revised version of this opinion is found at 5 F.3d 1199 (9th Cir.1992). However, the Ninth Circuit sitting en banc reversed this decision and affirmed the district court's denial of the writ of habeas corpus. *Jeffers v. Lewis,* 38 F.3d 411, 418 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995).

1079, 1096–97 (D.Ariz.1994). The court in *Jeffers* distinguished *Smith* on the grounds that the state statute analyzed in *Smith* required the court to make specific written findings concerning the weight of mitigating evidence, but Arizona's sentencing statute does not have a similar requirement. *Jeffers*, 38 F.3d at 417. The court in *Jeffers* did note that a specific finding and discussion would be helpful, but a sentencing court's failure to discuss each mitigating factor proffered and its effect on the court's sentencing determination does not constitute a denial of due process. *Id.* at 418. Further, the Court of Appeals found that the sentencing court's findings must be reviewed in light of the record as a whole. *Id.; see also Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir.1990) (in post-trial hearing factual determination may be implied by actions taken by court), *cert. denied*, 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1059 (1991); *Clark v. Ricketts*, 958 F.2d 851, 858 (9th Cir.1991) (noting that "[t]he due process clause does not require that the sentencing court exhaustively document its analysis of each mitigating factor as long as a reviewing federal court can discern from the record that the state court did indeed consider all mitigating evidence offered by the defendant").

 If a sentencing court is not required to discuss each mitigating factor on the record and note its effect on the court's sentencing decision, then it would appear to be equally true that the sentencing court need not specifically state that it has considered the combined weight of all the mitigating evidence. Thus, provided it appears that the sentencing court reviewed the mitigating evidence as a whole and did not categorically *reject* any evidence as occurred in *Smith*, the Petitioner has received due process.

Petitioner contends the following language from the Special Verdict clearly indicates that the sentencing court weighed the mitigating evidence individually against the aggravating factors: "The defendant, neither at the Presentence Hearing nor today, has presented this court with any other mitigating circumstances which this court can determine to be significant." (Ex. 2, P.I. at 38c.) The Court does not interpret the above-quoted language as evidence of the sentencing court specifically weighing the mitigating circum-

stances individually against the aggravating circumstances. To the contrary, the plural form of "circumstances" used by the court in the above quote and in its finding that "there are aggravating circumstances enumerated in Subsection F of Section 13–703 and that there are no mitigating circumstances sufficiently substantial to call for leniency" (*Id.* at 38c–38d) is indicative of a weighing of the combined mitigating circumstances. In *Smith*, 914 F.2d at 1168 (citations omitted), great weight was accorded to the Montana Supreme Court's finding that " 'no mitigating *circumstance was* sufficiently substantial to call for leniency.' " "The use of the singular form again reflects that each individual mitigating factor was weighed by itself against the totality of the aggravating factors." *Id.*

The Arizona Supreme Court also used the plural form in its independent review of Petitioner's sentence: "We find no mitigating circumstances in the record which could outweigh the aggravating circumstances; this includes the age of appellant." *State v. Gerlaugh*, 135 Ariz. 89, 89, 659 P.2d 642, 642 (1983).

The Court finds, in light of the trial court's and Arizona Supreme Court's statements quoted above, that sufficient indicia are present to indicate that the sentencing court adequately considered the totality of the circumstances. The requirement that mitigating evidence be weighed together has been satisfied in this case.

### C.) *Cooperation with Police:*

In claim 35 Petitioner contends that the sentencing court failed to consider Petitioner's cooperation with and politeness to the police as mitigating evidence. The only evidence before the sentencing court of Petitioner's cooperation with police was Petitioner's confession which was admitted during the trial. In the Special Verdict the sentencing court noted that it had considered all of the evidence presented at trial when determining the existence of mitigating circumstances and the sentence. Petitioner has not presented any evidence that the court did not consider the fact that Petitioner confessed yet found the evidence was insufficient to constitute a mitigating circumstance suffi-

ciently substantial to warrant leniency. In fact, the trial court in the Rule 32 proceeding stated that Petitioner had presented insufficient evidence of Petitioner's cooperation to constitute a mitigating circumstance. (Ex. 23, Min. E. at 83b.) The Arizona Supreme Court agreed with the trial court's rejection of Petitioner's confession as a substantial mitigating circumstance given Petitioner's lack of remorse and the aggravating circumstances. *State v. Gerlaugh,* 144 Ariz. 449, 464, 698 P.2d 694, 709 (1985). Therefore, in claim 35 Petitioner has failed to state a basis for habeas relief.

### D.) *Lack of Specific Intent:*

In claim 36 Petitioner asserts that the sentencing court failed to consider and find Petitioner's lack of specific intent to kill a mitigating circumstance. The sentencing court could not have considered Petitioner's lack of specific intent to kill to be a mitigating circumstance, because the court found that Petitioner intended to kill the victim. (Ex. 2, P.I. at 38c.) [28] Further, in the Rule 32 proceeding the trial court found that Petitioner's own confession provided sufficient evidence that he intended to kill the victim. (Ex. 23, Min. E. at 83a.)

### E.) *Good Character:*

Petitioner argues in claim 37 that the sentencing court improperly determined there was insufficient evidence of good character; therefore, the court failed to consider Petitioner's good character as mitigating evidence. Petitioner also repeats his argument that requiring him to prove by a preponderance of the evidence the existence of mitigating evidence is unconstitutional. The Court has previously rejected this argument. *See* discussion of claim 20 *supra* at p. 1422.

During the sentencing hearing Petitioner's parents testified that Petitioner was good with children and the elderly, babysitting and travelling with one elderly lady to dog shows (Ex. 16, R.T., 2/4/81 at 11–12, 15); had completed his G.E.D. and was planning to attend a community college (*Id.* at 14); was sensitive if an animal was injured (*Id.* at 15); and was a Boy Scout (*Id.* at 18). Petitioner also

submitted summaries of interviews of friends of Petitioner which were attached to the presentence report. The court stated in its Special Verdict that it had considered all of the evidence presented, but found none of the mitigating evidence sufficient to warrant leniency. (Ex. 2, P.I. at 38c, d.) In the Rule 32 proceeding, the court stated that Petitioner had presented insufficient evidence to find good character a mitigating circumstance. (Ex. 23, Min. E. at 83b.)

As stated before, *Eddings* only requires that the sentencing court consider all evidence offered in mitigation; however, the sentencer is not required to find the proffered evidence mitigating, nor must the sentencer accord the evidence the weight a defendant believes is appropriate. 455 U.S. at 114–15, 117, 102 S.Ct. at 876–77, 878. The sentencing court satisfied its duty to consider evidence of Petitioner's good character.

### F.) *Life Sentence's of Codefendants:*

Finally, in claim 44 Petitioner contends that the life sentences of the equally culpable codefendants constitutes mitigating circumstances that should have been considered to reduce his sentence. Respondents, however, dispute that the codefendants were equally culpable.

The sentencing court could not have considered the life sentences of the codefendants when it sentenced Petitioner, because Petitioner was sentenced prior to the codefendants. Notwithstanding that this evidence could not have been considered, Respondents are correct that the evidence demonstrates that Petitioner is more culpable than either of the codefendants. Petitioner, according to his confession, decided to commit the robbery, pulled the gun on Schwartz, decided to beat and rob Schwartz, decided to murder Schwartz, directed his codefendants to drag and hold Schwartz so Petitioner could run him over with the car, found the screwdriver and stabbed Schwartz, and then demanded the entire proceeds from the robbery. (Ex. 13, R.T., 12/17/80 at 83–95.)

In conclusion, the Court finds sufficient indicia are present to indicate that the sen-

---

**28.** *See also* the Court's discussion of claims 23 and 42 *supra* at pp. 1424–1425.

tencing court adequately considered all evidence offered by Petitioner in mitigation and did not exclude any mitigating evidence. *See Parker v. Dugger*, 498 U.S. 308, 314, 111 S.Ct. 731, 735–36, .112 L.Ed.2d 812 (1991) (statement by sentencing court that it considered all mitigating evidence sufficient to support finding). Accordingly, Petitioner is not entitled to habeas relief on claims 32 through 37 and claim 44.

### Claim 40: Whether Petitioner received constitutionally ineffective assistance of counsel at sentencing.

In claim 40 Petitioner alleges that his trial counsel provided him ineffective assistance during the sentencing phase. Specifically, Petitioner contends that counsel failed to argue against the imposition of the death penalty, failed to present certain character witnesses, failed to investigate and present psychological evidence, failed to make a recommendation to the presentence investigator, and failed to ask the court for leniency. Petitioner does not indicate how he was prejudiced by each alleged act of ineffective assistance of counsel. Instead, Petitioner contends that all the instances of ineffective assistance caused a complete breakdown in the adversarial process; therefore, prejudice can be presumed.[29]

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance fell outside the wide range of minimally competent representation and that, but for counsel's errors, a reasonable probability exists that the result at trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984).

The standard by which the prior performance of an attorney is judged is an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2065. In other words, to prove that an attorney ineffectively represented the defendant, a petitioner must prove that the attorney's performance fell below an undefined objective standard reviewed solely upon the circumstances of the particular case. Moreover, the Supreme Court has cautioned

that "[j]udicial scrutiny of counsel's performance must be highly deferential ... [and] [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065.

To demonstrate actual prejudice from his counsel's actions, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2067. However, an evaluation focusing only on the probable outcome is itself deficient. The Court would also have to consider whether the result of the trial was fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

### A.) *Failure to Argue Against Imposition of Death Penalty:*

■ Petitioner contends that his trial counsel rendered constitutionally ineffective assistance at sentencing for failing to argue against the imposition of the death penalty. Specifically, Petitioner contends that counsel should have presented additional character witnesses and psychological evidence, should have made a recommendation to the presentence investigator and should have asked the court for leniency. The Court has analyzed these allegations of ineffective assistance of counsel separately below and has determined that Petitioner did not receive constitutionally ineffective representation based on these allegations.

Further, Respondents correctly point out that Petitioner's counsel, in fact, argued against the finding of two of the three aggravating circumstances (Ex. 16, R.T., 2/4/81 at 6–8) and argued that Petitioner's age was a mitigating circumstance (*Id.* at 23). Counsel also called as witnesses Petitioner's parents to present mitigation testimony regarding

---

**29.** Given the actions of counsel at sentencing described *infra,* the Court finds that the adversarial system did not break down and prejudice

cannot be presumed. *See United States v. Cronic,* 466 U.S. 648, 657–62, 104 S.Ct. 2039, 2046–48, 80 L.Ed.2d 657 (1984).

Petitioner's good character, his close family ties and his association with the codefendants. (*Id.* 8–20.) Finally, counsel submitted summaries of interviews to be part of the presentence report,[30] and contested the presentence investigator's conclusion that Petitioner was not remorseful. (*Id.* at 22–26.) Additionally, after the court sentenced Petitioner on the other related charges, counsel argued that Petitioner could not be sentenced on the murder charge without violating the double jeopardy clause. Given these acts by counsel, Petitioner has failed to prove counsel's representation fell outside the wide range of minimally competent representation. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also, Paradis v. Arave,* 20 F.3d 950, 959 (9th Cir. 1994) (petitioner failed to demonstrate counsel's performance was ineffective even though he argued that counsel did not adequately prepare for the sentencing, did not investigate or present all mitigating circumstances, such as his oppressive upbringing or that he is easily angered, and only presented one witness and three pages of a sentencing memorandum).

B.) *Failure to Present Certain Character Witnesses:*

Petitioner alleges that his counsel was ineffective for failing to call additional character witnesses, such as Miss Parkhurst, Ms. Sanders and Ms. Button. At the Rule 32 hearing, Miss Parkhurst testified via a videotape that Petitioner helped her raise and care for her dogs, that he was active in Boy Scouts and the 4–H Club, that he was a trustworthy, sensitive and peaceful person, and that he was one of the finest kids she knew. Ms. Sanders testified that Petitioner helped care for her two nephews on occasion, was never violent, and was sensitive and easily swayed by peer pressure. Ms. Button testified that Petitioner babysat her child for three years and never showed any violent tendencies. ▮ At the Rule 32 hearing Petitioner's counsel stated that he obtained a list of possible character witnesses from Petitioner and

his family. Either counsel or someone on his behalf interviewed the witnesses from that list. Counsel then made a tactical decision not to call the witnesses at the sentencing hearing because all they could really say about Petitioner was that he was a good person who could be trusted. Counsel was also concerned that the testimony about Petitioner being good with dogs could harm his client—Petitioner has compassion for animals but no regard for human life. (Ex. 28, R.T., 12/15/83 at 108.) Instead counsel called Petitioner's parents as witnesses and provided summaries of interviews with friends to be attached to the presentence report. Petitioner has not proven that trial counsel's failure to call additional character witnesses at the sentencing hearing was anything other than sound trial strategy made after an appropriate investigation which would not constitute ineffective representation. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

Petitioner has also not demonstrated that he suffered any prejudice from counsel's failure to call additional character witnesses. Through the testimony of Petitioner's parents, the court learned that Petitioner helped an elderly lady show her dogs, was good with animals, was sensitive, babysat and was a Boy Scout.[31] (Ex. 16, R.T., 2/4/81 at 8–20.) The testimony of Miss Parkhurst, Ms. Sanders and Ms. Button added very little to the parents' testimony; therefore, there is not a reasonable probability that Petitioner would not have been sentenced to death had the women testified.

C.) *Failure to Investigate and Present Psychological Evidence:*

Petitioner alleges that trial counsel rendered constitutionally ineffective assistance of counsel for failing to investigate and present psychological evidence at the sentencing hearing. At the Rule 32 hearing, Petitioner's trial counsel testified that, prior to trial, Petitioner refused to allow a psychiatrist be involved in his case. (Ex. 28, R.T., 12/15/83 at 106–07.) After trial, counsel did not have

---

**30.** Petitioner incorrectly represents to the Court that these summaries were not made a part of the presentence report. (Resp. Mot. Summ. J. at 140.) A review of the record shows that the summaries were included in the Supplemental

Report to the presentence report. (Ex. 2, P.I. at 40f.)

**31.** See *supra* discussion of character evidence at pp. 1431–1432.

**1432**

specific recollection of Petitioner informing counsel that he had changed his mind. (*Id.* at 116.) The court in the Rule 32 proceeding found that Petitioner had failed to establish that he was willing to present psychiatric testimony at the sentencing hearing. (Ex. 23, Min. E. at 83b–83c.)

■ The Court agrees with the state court that Petitioner has failed to prove he had changed his mind such that psychiatric testimony could be presented at the sentencing hearing. Therefore, counsel's tactical decision not to present such testimony was based on his client's wishes and does not constitute deficient representation. *See, e.g., Jeffries v. Blodgett,* 988 F.2d 923, 939–40 (9th Cir.1993) (finding no ineffective assistance of counsel for failing to present mitigating evidence where counsel acquiesced to defendant's decision not to present the evidence).

■ Furthermore, the Court finds that Petitioner has failed to prove that he was prejudiced by counsel's failure to present psychiatric testimony at sentencing. Dr. O'Brien's testimony presented at the Rule 32 hearing was equally damaging to Petitioner. Dr. O'Brien diagnosed Petitioner as suffering from the personality disorder of sociopathy. (Ex. 30, R.T., 3/8/84 at 8.) That Petitioner may suffer from sociopathy, a personality disorder, is generally insufficient to constitute a mitigating circumstance. *State v. Brewer,* 170 Ariz. 486, 505, 826 P.2d 783, 802–03 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992). Dr. O'Brien opined that Petitioner's sociopathy was the result of his parent's high expectations for their children and his association with Matthew Leisure from which he learned that his lawless behavior could carry no consequences; no physiological cause was found. (*Id.* at 13, 17, 18, 20, 31.) However, Petitioner's home environment was considerably more normal than the typical sociopath's environment. (*Id.* at 20.) Dr. O'Brien could not explain why other family members did not display the violent or aggressive tendencies as did Petitioner. (*Id.* at 29.)

Dr. O'Brien described Petitioner as "an individual who wants what he wants when he wants it and has a need to get instant gratification." (*Id.* at 10.) Petitioner also has a "sense of entitlement," "that if I can get something immediately, even though it means I'm going to get into trouble, I will take it immediately rather than take it later." (*Id.*) Dr. O'Brien also opined that Petitioner committed crimes for the sense of superiority and because it was the macho thing to do. (*Id.* at 21.) Further, Dr. O'Brien believed that it was possible for Petitioner to have exaggerated the amount of alcohol he consumed. (*Id.* at 24.)

Regarding the actual robbery and murder, Dr. O'Brien testified that, when the victim took the gun away from Petitioner, Petitioner was angered and stressed. Petitioner then felt entitled to kill the victim. (*Id.* at 23.) However, Petitioner was under no particular stress and had no anger toward the victim at the time Petitioner decided to rob the victim, pulled the gun and directed the victim where to drive. (*Id.* at 35.) In other words, Petitioner made a rational decision to rob the victim at gunpoint. (*Id.* at 38.)

The Court finds that, given the equally damaging nature of Dr. O'Brien's testimony, no reasonable probability exists that Petitioner would not have been sentenced to death had counsel presented the psychological testimony.

**D.) *Failure to Make Recommendation to Presentence Investigator:***

■ Petitioner argues that trial counsel's failure to make a recommendation to the presentence investigator concerning the appropriate sentence violated his Sixth Amendment right to effective assistance of counsel. Prior to sentencing Petitioner's counsel spoke with the presentence investigator, submitted to the investigator summaries of interviews with friends to be attached to the report, and informed the investigator that he would make sentencing recommendations directly to the court. (Ex. 16, R.T., 2/4/81 at 21.) Petitioner has not proven that counsel's decision to make the sentencing recommendations directly to the court during the sentencing hearing, as opposed to submitting a written report to be attached to the presentence report, constituted representation below the wide range of minimally competent representation. Additionally, Petitioner has not alleged, much less proven, that he was

prejudiced by counsel's decision to present the same argument orally directly to the sentencing court.

### E.) *Failure to Ask the Court for Leniency:*

 Finally, Petitioner contends that his counsel was ineffective for failing to ask the court for leniency. As previously noted above, Petitioner's counsel argued that the court should not find two aggravating circumstances and should find Petitioner's age, impaired mental condition, good character, close family ties and his associations with the codefendants mitigating circumstances. Counsel also called Petitioner's parents as witnesses and persuaded the court to agree that people show remorse in different ways. Given counsel's actions, Petitioner has not argued, and the Court cannot find, that Petitioner was prejudiced by counsel not specifically asking the sentencing court for leniency.

### Claim 41: Whether Petitioner received constitutionally ineffective assistance of counsel on appeal.

 Petitioner alleges in claim 41 that his appellate counsel rendered ineffective assistance by failing to raise any claims of sentencing errors or to attack the constitutionality of Arizona's sentencing statute. Respondents counter that appellate counsel made a valid tactical decision to concentrate on Petitioner's stronger claims without detracting from their merit with numerous weak claims. Respondents further contend that Petitioner suffered no prejudice given Petitioner's death sentence was reviewed and affirmed pursuant to a statutorily mandated independent review and his sentencing claims are subject to an on-the-merits review by this Court.

Petitioner's trial and appellate counsel, Mr. William Feldhacker, testified at the Rule 32 hearing that he, in fact, did focus on the main issue of the suppression of the confession in addition to several other trial issues. However, counsel did not want to raise numerous other issues that would distract from the credibility of the main arguments. (Ex. 28, R.T., 12/15/83 at 111.) Counsel also testified that the Arizona Supreme Court was statutorily required to review the appropriateness of the death penalty regardless of whether the sentencing issues were raised on appeal.

(*Id.*) Appellate counsel's decision was based on his professional judgment and does not constitute deficient representation. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) (recognizing the importance of "winnowing out weaker arguments on appeal" and holding no constitutional right to have all nonfrivolous issues requested by defendant raised).

The Court also agrees with Respondents that Petitioner has not shown that, but for counsel not raising the sentencing issues on appeal, his appellate review would have been different such that his conviction or sentence would have been overturned. The Arizona Supreme Court performed an independent review of Petitioner's death sentence. The Supreme Court found no mitigating circumstances that outweighed the aggravating circumstances; therefore, the death sentence was affirmed. *State v. Gerlaugh*, 135 Ariz. 89, 89, 659 P.2d 642, 642 (1983). Petitioner is not entitled to habeas relief based on this claim.

### Claim 43: Whether Arizona's sentencing statute is unconstitutional because it states that the court "shall impose" a death sentence if no mitigating circumstances are found and the existence of at least one aggravating circumstance has been proven.

 Petitioner argues that A.R.S. § 13–703(E) violates the constitutional requirement of individualized sentencing because is mandates a death sentence if the sentencing court finds at least one aggravating circumstance and no substantial mitigating circumstances. The Supreme Court in *Walton v. Arizona*, 497 U.S. 639, 651–52, 110 S.Ct. 3047, 3056, 111 L.Ed.2d 511 (1990), rejected this argument, citing *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), and *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), two recent cases which found similarly worded capital sentencing schemes constitutional. The Ninth Circuit, following *Walton*, also rejected a similar constitutional challenge to Arizona's sentencing statute. *Richmond v. Lewis*, 948 F.2d 1473, 1482 (9th Cir.1992), *rev'd on other grounds*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992).

Thus, Petitioner is not entitled to relief based on claim 43.

**Claims 45–48: Whether Petitioner is entitled to federal habeas relief based on alleged errors in his Rule 32 post-conviction proceeding.**

Petitioner alleges three errors occurred during the post-conviction relief stage which violated his rights to due process and, thus, entitle him to habeas relief. In claim 45 Petitioner alleges it was error for Judge I. Sylvan Brown to rule on his Rule 32 petition because Judge Brown did not preside over all of the hearing held in the Rule 32 proceeding and because Judge Brown also presided over the trial and sentencing. In claim 46 Petitioner contends that the court erred in refusing to admit polygraph evidence in the Rule 32 hearing. In claim 47 Petitioner submits that he was denied due process by the court's failure to disburse funds for an investigator to interview the jurors. Finally, in claim 48 Petitioner contends the court erred in denying him funds to conduct a proportionality study.

Respondents argue that the errors alleged by Petitioner are errors of state law and not cognizable in a federal habeas proceeding. *Estelle v. McGuire,* 502 U.S. 62, 72–73, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). Respondents further argue that constitutional due process concerns are not applicable because state collateral proceedings are not constitutionally required, citing *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989). Respondents are correct.

■ The Ninth Circuit Court of Appeals has addressed this issue and, following the majority of circuits, has held that errors concerning the process of a state post-conviction proceeding are not cognizable in federal habeas corpus proceedings. *Franzen v. Brinkman,* 877 F.2d 26 (9th Cir.1989), *cert. denied,* 493 U.S. 1012, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989). Errors in a state post-conviction proceeding do not attack the constitutionality of Petitioner's detention, but rather represent an attack on a proceeding collateral to the detention. *Id.* Therefore, since such errors do not attack the constitutionality of the detention, they are not cognizable in a habeas corpus proceeding, pursu-

ant to 28 U.S.C. § 2254. Petitioner is not entitled to relief on claims 45 through 48.

**Claims 49 and 50: Whether Petitioner's prior robbery conviction can properly support the existence of A.R.S. § 13–703(F)(1) aggravating circumstance and whether Petitioner's sentence is unconstitutional given his inability to voir dire the sentencing judge.**

In claim 49 Petitioner contends that his robbery conviction cannot support the existence of A.R.S. § 703(F)(1) aggravating circumstance because subsequent to his conviction the robbery statute was amended to carry a sentence that would not satisfy the requirements of the (F)(1) circumstance. Petitioner argues that this amendment to the robbery statute creates an unconstitutionally arbitrary application of the (F)(1) circumstance. In claim 50 Petitioner argues that his sentence is constitutionally infirm because he was not permitted to conduct voir dire on the sentencing judge. Instead of addressing either claim on the merits, Respondents contend that this Court should not reach the merits of Petitioner's claims unless Petitioner can show cause and prejudice to excuse the default because the state court found the claims to be procedurally barred. Rather than presenting a cause and prejudice analysis in response to Respondents' argument, Petitioner argued that the state court's decision was ambiguous as to whether it was relying on an independent state ground.

Petitioner first raised claims 49 and 50 in his second Rule 32 post-conviction relief proceeding filed on September 26, 1985. (Ex. 36, P.I. at 1.) The State moved the court to dismiss the petition on the ground that Petitioner was precluded from relief for failing to raise the claims in his first Rule 32 petition. (*Id.* at 14.) The state court found that the claims could have been raised in Petitioner's first Rule 32 petition and granted the State's motion to dismiss. The court further noted that the petition did not raise issues that would entitle Petitioner to relief on the merits. (Ex. 35, Min. E. at 32.)

■ A state court's explicit alternative ruling on the merits does not negate the independent state ground that the claim is

procedural barred. *Harris v. Reed,* 489 U.S. 255, 264, n. 10, 109 S.Ct. 1038, 1044, n. 10, 103 L.Ed.2d 308 (1989); *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993) (holding claim was procedurally defaulted when state court denied claim on procedural grounds and on the merits). A procedural bar is independent if it is clear from the state court's opinion that the state ground is an alternative holding. *Sochor v. Florida,* 504 U.S. 527, 533, 112 S.Ct. 2114, 2119, 119 L.Ed.2d 326 (1992). In the instant case the state court clearly dismissed the claims and granted the State's motion to dismiss because the claims were procedurally barred. The court merely "further noted" that the claims had no merit—an explicit alternative holding.

Therefore, the Court finds that the issues presented in claims 49 and 50 are procedurally defaulted. In light of Petitioner's failure even to attempt to demonstrate legitimate cause and actual prejudice, the Court finds that claims 49 and 50 may not be reviewed on-the-merits. Petitioner is denied habeas relief based on these claims.

Based upon the discussion above,

**IT IS ORDERED** granting Respondents' Consolidated Motion for Summary Judgment to the Amended Petition for Writ of Habeas Corpus **[file doc. no. 166–1].**

**IT IS FURTHER ORDERED** denying with prejudice Petitioner's Amended Petition for Writ of Habeas Corpus filed on December 6, 1991 **[file doc. no. 101–1].**

**IT IS FURTHER ORDERED** vacating the stay of execution previously imposed by this Court on July 12, 1985 **[file doc. no. 3].**